89 F.3d 837
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Carla VALECKO, Plaintiff-Appellee,
v.
STERLING, INC., Defendant-Appellant.
 No. 95-3180.
 United States Court of Appeals, Sixth Circuit.
 April 25, 1996.
 
 Before: KENNEDY and COLE, Circuit Judges; COHN, District Judge.*
 PER CURIAM.
 
 
 1
 Plaintiff appeals from an order granting summary judgment to defendant in her suit under Title VII of the 1964 Civil Rights Act, 42 U.S.C. § 2000e, alleging that her employer terminated her on the basis of her pregnancy. For the following reasons, we AFFIRM.
 
 I.
 
 2
 Plaintiff Carla Valecko began working at the Akron, Ohio headquarters of defendant Sterling, Inc. ("Sterling") in February, 1990. Sterling is a multi-million dollar jewelry company, and plaintiff worked there as a security guard until Sterling terminated her employment on April 15, 1993.
 
 
 3
 Sterling contends that plaintiff was terminated as a result of her failure to follow company security policies, despite repeated counseling (i.e., warnings and reprimands), and for making offensive and derogatory remarks about her supervisors to other employees. Plaintiff, however, alleges that she was terminated as a result of her pregnancy, which she announced in December, 1992.
 
 
 4
 Sterling evaluated plaintiff at regular intervals through a system which involved assigning scores in several areas, totalling the scores, and then rating the employee based on that total. Overall employee evaluations fell into one of four categories: outstanding, commendable, proficient, and unsatisfactory.
 
 
 5
 Plaintiff apparently performed well the first eighteen months of her employment. On her August, 1991 performance review, plaintiff received a score of 32, which fell into the "commendable" range. The evaluation indicated a need for plaintiff to improve contact with her supervisor and to take only one fifteen minute break per day.
 
 
 6
 On her next performance review, March 3, 1992, plaintiff's score dropped to 27, which fell into the "proficient" range. The evaluation indicated a need to improve her use of sick time. Subsequently, a counseling report issued to plaintiff indicated that she took excessive breaks and needed to keep her supervisors notified as to her availability and location per company policy.
 
 
 7
 On her next performance review, August 6, 1992, plaintiff's score dropped again, this time to 21, which is on the low end of "proficient." This evaluation indicated delayed work, time away from her duties, and a general deterioration in her performance. Subsequently, plaintiff was verbally counseled on October 7, 1992, and on November 10, 1992, for engaging in personal activities while on duty and for taking longer and more frequent breaks than permitted.
 
 
 8
 On December 8, 1992, plaintiff told her supervisor that she was pregnant. Subsequently, she was issued a counselling report for taking excessive breaks on December 10, 1992. She was also verbally counselled in late December for gossiping and excessive absenteeism, and was issued a counseling report on March 18, 1993 for reporting late to her appointed post after roll-call.
 
 
 9
 Within a week of announcing her pregnancy, plaintiff was assigned to "second shift" (apparently a less desirable shift) to cover for a vacationing officer. However, after the officer returned, plaintiff remained on second shift.
 
 
 10
 On April 12, 1993, plaintiff was again verbally counselled for taking excessive breaks and for failing to maintain adequate radio contact with the control room. Soon thereafter, the Human Relations Manager, Laura Yahner, learned from the Director of Security, Mike LaMonica, that plaintiff had engaged in "malicious gossip" about Mr. LaMonica and his daughter Nikki (who also worked at Sterling and had, on more than one occasion, counselled plaintiff). Yahner investigated and confirmed the allegations of malicious gossip. Finally, on April 13, 1993, Mr. LaMonica reported that plaintiff closed her post without contacting the control room as required by company policy. Ms. Yahner then made the decision to terminate plaintiff's employment with Sterling.
 
 
 11
 Plaintiff filed suit under Title VII claiming that she was discriminated against on the basis of her pregnancy. After a period of discovery, Sterling filed for summary judgment. Plaintiff filed a response that was supported only by her own affidavit. Sterling filed a motion to strike the affidavit because it contained inadmissible hearsay and was not based on personal knowledge. Plaintiff responded, claiming that the information was based on personal knowledge and that the majority of the alleged hearsay was admissible nonhearsay under FED.R.EVID. 801(d)(2)(D).
 
 
 12
 The District Court granted in part and denied in part Sterling's motion to strike plaintiff's affidavit, striking some paragraphs as inadmissible hearsay and others for lack of personal knowledge. In the same opinion, the District Court granted Sterling's motion for summary judgment, reasoning that plaintiff presented no direct evidence of discrimination and failed to demonstrate a genuine issue of material fact on each of the elements required for a prima facie case under Title VII. Accordingly, summary judgment was entered in favor of Sterling and plaintiff now appeals.
 
 II.
 
 13
 Plaintiff argues that the record contained evidence of direct discrimination and also that she has presented a prima facie case of discrimination sufficient to survive summary judgment. Further, plaintiff argues that the District Court erred in striking portions of her affidavit because there was evidence in the record, although not referenced in her response or her affidavit, that established plaintiff's personal knowledge and the foundational basis for statements held to be hearsay by the District Court. Finally, plaintiff claims that the District Court erred in not allowing her the opportunity to submit additional evidence following the court's ruling on Sterling's motion to strike.
 
 
 14
 Sterling argues that the grant of summary judgment should be affirmed because plaintiff can establish no genuine issue of material fact with regard to several essential elements of her claim of discrimination. Sterling also asks this court to confine its review of the evidence to that offered by plaintiff in response to its motion for summary judgment--her affidavit--and to disregard the references she makes to the record in her brief on appeal. Finally, Sterling argues that the District Court properly struck portions of plaintiff's affidavit and was under no obligation to give plaintiff an opportunity to correct these infirmities.
 
 III.
 
 15
 We review the District Court's grant of summary judgment de novo. EEOC v. University of Detroit, 904 F.2d 331, 334 (6th Cir.1990). Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). At this stage in her case, plaintiff "may not rest upon mere allegations," but "must set forth specific facts showing that there is a genuine issue for trial." FED.R.CIV.P. 56(e).
 
 
 16
 To proceed to trial on a Title VII claim, plaintiff must either produce credible, direct evidence of discriminatory intent in her termination, see Terbovitz v. Fiscal Court of Adair County, 825 F.2d 111 (6th Cir.1987), or establish a prima facie case of discrimination under the McDonnell Douglas/Burdine evidentiary framework. See Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248 (1981); McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).
 
 
 17
 Under McDonnell Douglas/Burdine, plaintiff must establish that (1) she was a member of a protected class; (2) she was discharged; (3) she was qualified for the position; and (4) she was replaced by a person outside the class. McDonnell Douglas, 411 U.S. at 802. The defendant employer must then articulate a nondiscriminatory explanation for the termination. Then, in order to carry her burden, plaintiff must demonstrate that this explanation is pretextual by "produc[ing] sufficient evidence from which the jury may reasonably reject the employer's explanation." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir.1994).
 
 
 18
 Plaintiff has not produced credible, direct evidence of discriminatory intent on the part of Sterling. And, assuming arguendo that plaintiff successfully stated a prima facie case under McDonnell Douglas/Burdine, she has failed to demonstrate that Sterling's articulated reasons for firing her are pretextual.
 
 A.
 
 19
 Plaintiff argues that her affidavit presents credible, direct evidence of Sterling's intent to discriminate against her on the basis of her pregnancy. We disagree. The direct evidence of Sterling's allegedly discriminatory intent contained in plaintiff's affidavit consists of hearsay statements from various individuals that would tend to show that management did not approve of unwed mothers and that plaintiff would not be returning to Sterling after her maternity leave.[1]
 
 
 20
 Plaintiff's argument that these statements are admissible nonhearsay under FED.R.EVID. 801(d)(2)(D) is not well taken. According to 801(d)(2)(D), "a statement is not hearsay if ... [it] is offered against a party and is ... a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship." For the statements to have been "within the scope of [their] agency," and hence admissible nonhearsay, the declarants must have been "involv[ed] in the decision to discharge [plaintiff]." Hill v. Spiegel, Inc., 708 F.2d 233, 237 (6th Cir.1983). However, plaintiff has submitted no evidence from which the court could infer that the declarants were involved in the decision to terminate plaintiff.
 
 
 21
 Further, the fact that two of the statements come from plaintiff's then-supervisors is insufficient, in itself, to establish that matters bearing upon plaintiff's termination were within the scope of their employment. See id. at 237 (stating that "[t]he mere fact that each of [the declarants] was a 'manager' ... is clearly insufficient to establish that matters bearing upon [plaintiff's] discharge were within the scope of their employment"); see also Mitroff v. Xomax Corp., 797 F.2d 271, 275-76 (6th Cir.1986) (holding that the statement of defendant-employer's assistant personnel manager regarding "a pattern of ... discrimination" at the company is inadmissible hearsay absent a proper foundation showing that it was within the scope of his agency or employment). Thus, plaintiff's affidavit does not "set forth such facts as would be admissible in evidence," FED.R.CIV.P. 56(e), and, accordingly, the District Court did not err in concluding that plaintiff presented no credible, direct evidence of Sterling's intent to discriminate against her on the basis of her pregnancy.
 
 B.
 
 22
 Alternatively, plaintiff argues that she has stated a prima facie case under McDonnell Douglas/Burdine. Assuming arguendo that plaintiff has established the four elements of a prima facie case under this theory, she has nonetheless failed to demonstrate that Sterling's articulated reasons for firing her are pretextual.
 
 
 23
 Sterling, in its motion for summary judgment and again before this court, has demonstrated that plaintiff was terminated because she repeatedly failed to maintain radio contact and because she repeatedly made disparaging remarks about her supervisors. Both actions violate company policy, and plaintiff had been counselled previously regarding each infraction. Further, while plaintiff disputes some of the occasions on which she failed to maintain radio contact, she does not dispute others, and nowhere in her affidavit does she deny repeatedly making disparaging remarks about her supervisors.
 
 
 24
 To proceed to trial in light of Sterling's nondiscriminatory explanation, plaintiff must show that it is pretextual by producing evidence sufficient to create a genuine issue of material fact on the ultimate question of whether Sterling intentionally discriminated against her because of her pregnancy. See St. Mary's Honor Center v. Hicks, 113 S.Ct. 2742, 2749 (1993). For the same reasons stated in Part III.A., supra, plaintiff cannot meet this burden. Her affidavit simply does not contain sufficient admissible evidence of intentional discrimination because the statements offered therein are inadmissible hearsay and cannot properly be considered under FED.R.CIV.P. 56(e).
 
 
 25
 Further undermining plaintiff's assertion of intentional discrimination is the fact that Sterling's Human Relations Manager, Laura Yahner, made the decision to terminate plaintiff only after investigating the alleged violations of company policy, plaintiff's offensive and derogatory statements. Ms. Yahner interviewed the officer who overheard plaintiff make the derogatory statements and also the officer in charge of the radio control room. Based upon the information received from these officers, and plaintiff's pervious counseling, Ms. Yahner made the decision to terminate plaintiff.
 
 
 26
 In conclusion, we note that the District Court was under no obligation to afford plaintiff additional time to supplement her evidentiary response to defendant's motion below; Rule 56(e) unambiguously notified plaintiff of her obligations in responding to defendant's motion. Likewise, the District Court was under no obligation to scrutinize the entire record in search of facts that may have supported plaintiff's position. In Guarino v. Brookfield Township Trustees, 980 F.2d 399, 406 (6th Cir.1992), we stated: "Rule requires the non-moving party to do its own work, and to assist the trial court by responding to the motion, pointing out as specifically as is reasonably possible facts that might demonstrate the existence of genuine issues." Accordingly, the District Court afforded plaintiff a fair opportunity to respond to Sterling's motion for summary judgment.
 
 IV.
 
 27
 For the foregoing reasons, the decision of the District Court is hereby AFFIRMED.
 
 
 
 *
 The Honorable Avern Cohn, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 Plaintiff does not explicitly identify the portions of her affidavit that she relies on. However, the following statements come closest to presenting direct evidence of Sterling's allegedly discriminatory intent:
 p 9: "On December 8, 1992, ... after I told [my supervisor] Kevin Hoover of my pregnancy, I was told by Kevin Hoover that Mike LaMonica did not like the fact that I was pregnant and unmarried."
 p 10: "Chris Bersiko[,] who worked for the company which serviced vending machines in the cafeteria[,] ... told me ... Nikki announced that I was going to be fired by her father Mike LaMonica."
 p 18: "In March of 1993, I was approached by my supervisor, Kevin Stutler, who said that ... I would not be returning to Sterling after the conclusion of my maternity leave."