RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION:  2000 FED App. 0386P (6th Cir.)
File Name:  00a0386p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

CHARLIE DEWS,
         *Plaintiff-Appellant,*

         *v.*

A.B. DICK COMPANY,
         *Defendant-Appellee.*

No. 98-4551

Appeal from the United States District Court
for the Southern District of Ohio at Cincinnati.
No. 97-00792—Sandra S. Beckwith, District Judge.

Argued:  October 28, 1999

Decided and Filed:  November 8, 2000

Before:  JONES, BOGGS, and COLE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:**  Paul J. Vollman, LINDHORST & DREIDAME, Cincinnati, Ohio, for Appellant.  Mark J. Stepaniak, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellee.  **ON BRIEF:**  Paul J. Vollman, LINDHORST & DREIDAME, Cincinnati, Ohio, for Appellant.  Mark J. Stepaniak, Jeremy P. Blumenfeld, TAFT, STETTINIUS & HOLLISTER, Cincinnati, Ohio, for Appellee.

1

JONES, J., delivered the opinion of the court, in which COLE, J., joined.  BOGGS, J. (pp. 14-17), delivered a separate dissenting opinion.

————————————

**OPINION**

————————————

NATHANIEL R. JONES, Circuit Judge.    Plaintiff-Appellant Charlie Dews ("Dews") appeals the district court's grant of summary judgment to Defendant-Appellee A.B. Dick Company ("A.B. Dick" or "the company").  Dews sued A.B. Dick for employment discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 2000, and O.R.C. § 4112, *et seq*, alleging that the company wrongfully denied him promotions in 1995 and 1996 on the basis of his race.  For the reasons that follow, we **REVERSE** the district court's judgment and **REMAND** for further proceedings.

**I.**

A.B. Dick manufactures and sells printing presses, pre-press equipment, and related supplies.  Prior to 1994, the company also sold, but did not manufacture, copy machines. From 1984 through 1992, A.B. Dick's sales force was divided into geographical sales territories known as branches. Branches consisted of a sales territory the size of approximately one major city and were run by Branch Sales Managers.  Dews, an African American male, worked for A.B. Dick beginning in 1984 as a Copier Sales Representative in Cincinnati, Ohio. From May 1988 until 1992, A.B. Dick promoted Dews several times, first to Senior Sales Representative, then to Sales Manager of the Cincinnati Branch, and finally to Senior Branch Sales Manager in 1992.

In 1993, management restructured the company from branch offices to sales districts and closed the Cincinnati branch. Several of the old branch offices were then combined into multi-state districts, each  headed by a District Sales Manager ("DSM"). Many branch mangers lost their jobs

during the restructuring. Although A.B. Dick eliminated Dews' position, he was not laid off. Instead, Richard Peterson, former Vice President of Sales and Marketing, promoted Dews to Regional Manager of Copier Sales. A.B. Dick relocated Dews and his family to Atlanta, Georgia, where Dews managed copier sales for the Eastern Region.

In May 1994, A.B. Dick withdrew from the copier sales business. Most of the employees in the copier division lost their jobs at this time. A.B. Dick eliminated Dews' position as Regional Manager of Copier Sales, but again he was not laid off. Rather, the company offered, and Dews accepted, a position in government sales as National Digital Government Manager. In that position, Dews sold A.B. Dick products to national and local government customers.

Two District Sales Manager positions became available in 1995 -- one for the Central District and the other for the Northeast District. Both positions were created during the 1992 sales force restructuring into districts. The Central District combined the old Cincinnati branch, which Dews headed in 1992, with the Columbus and Dayton branches. A.B. Dick originally considered Dews and Randy Freel for the Central DSM position in 1992. Both were considered highly qualified for the position, yet the company decided Dews' talents would be better utilized as Copier Regional Sales Manager. Accordingly, in 1992, Randy Freel became the DSM for the Central District.

In 1995, after Dews relocated to Atlanta as Copier RSM, Dews learned that Randy Freel left the company. Ron Kukla, then National Sales Manager, was responsible for filling the Central DSM vacancy. Although Dews was strongly considered for the position three years earlier, Kukla and Peterson recruited from outside A.B. Dick to fill the position. The two contracted with Jeff Stultz, a recruiter, who stated that Kukla and Peterson assured him that no internal candidates were being considered for the Central District Sales Manager position.

Kukla states that a candidate for the Central DSM position required the following qualifications: (1) experience in or selling to the commercial print market -- defined as businesses with annual sales in excess of five million dollars, and (2) experience managing employees from a distance. Kukla interviewed Dews but did not consider him to be the best candidate for the Central DSM position. Instead, Kukla selected external candidate Mike Dregalla because he allegedly had experience working for a commercial printer and in managing people from a distance. Dews claims Kukla never informed him of his decision to hire Dregalla.

Additionally, the Northeast DSM position was vacated in May 1995. This position was identical to the Central DSM position. Kukla and Peterson interviewed numerous internal candidates and eventually hired Scott Schwebke, a copier salesman from the Chicago District. Schwebke was an entry-level copier salesman at the time who did not have management experience at A.B. Dick prior to the promotion.

In early 1996, A.B. Dick's new Chief Executive Officer ("CEO"), Jerry McConnell, told Peterson that declining sales necessitated a forty percent reduction of A.B. Dick's field employees. At that time, A.B. Dick sold products through direct and indirect channels of distribution. Direct sales were made by A.B. Dick employees, while indirect sales were made through independently owned distributorships licensed to use the A.B. Dick name. Both indirect and direct sales employees ultimately reported to Peterson. To achieve a forty percent reduction-in-force, Peterson combined the direct and indirect sales forces and then divided them into six geographic regions headed by Regional Sales Managers. Kukla states that the changes in position to Regional Sales Managers were not promotions, but merely reflected new titles and a readjustment of the responsibilities for six people.

Peterson assigned Schwebke to the Northeast Region and Dregalla to the Central Region. He also selected Ken Johnson, with whom Dews had competed over the years, as a Regional Sales Manager. Peterson eliminated the positions

legitimate, non-discriminatory reason for not selecting Dews. He was not in a position that management had determined was the proper zone of consideration. Dews admitted in his deposition that if he had obtained the position of District Sales Manager when it was open in 1995, he would have been given one of the Regional Sales Manager positions when the reorganization occurred in 1996.

Under these circumstances, I would hold that Dews has not presented evidence sufficient to require a trial on the issue of pretext, nor has he met the requirements we have established for making out a prima facie case.

With respect to the claims concerning the earlier filling of District Sales Manager vacancies, I agree with the district court that these were time-barred.

There are two mildly confounding factors that the court stresses that must be considered. One of the six positions was held open for, and occupied briefly by, a personal acquaintance of the new CEO, who had worked for the CEO in an earlier job. That person quit in a few weeks, and the job was filled as indicated above. There is not the slightest argument that the friend was brought in as a pretext to deny Dews the job, and the law is well settled that personal favoritism, not tied to racial animus, does not show pretext. Second, there is the alleged remark by Dan Holland to Dews that he would not be considered for the Western Regional Manager position because it would involve relocation, when the position was ultimately filled by a person who relocated from Chicago. Holland was Dews's then-current boss, and was in no way a decision-maker regarding the Regional Sales Manager vacancies. Thus, his alleged statement, introduced by way of Dews's affidavit, is hearsay, and inadmissable even as an admission, as being outside the scope of his authority. See FED. R. EVID. 801(d)(2)(D); *Mitroff v. Xomox Corp.*, 797 F.2d 271, 275-77 (6th Cir. 1986); *Hill v. Spiegel, Inc.*, 708 F.2d 233, 237 (6th Cir. 1983). Cf. *Valecko v. Sterling, Inc.*, 89 F.3d 837 (Table), 1996 WL 205592, **3 (unpublished) (6th Cir. 1996).

Neither of these factors, even when taken as true, show that Dews was treated any differently than other similarly situated white employees, or that there was any racial component to the decisions made by management.

I dissent primarily because I believe that this case establishes a very broad and disturbing precedent, which will effectively force companies into a very rigid and bureaucratic system for filling all management vacancies, lest they be put to trial by any lower-level employee who has been "fulfilling the employer's legitimate expectations" in some position plausibly connected to the position filled.

However, I also believe that the district court did not err in granting summary judgment because there was no evidence of pretext sufficient to challenge the employer's proffered

of national managers Kukla and Morris Clement and re-assigned them to two of the RSM positions. Kukla maintains that the company did not consider any other A.B. Dick employees for these RSM positions. He does admit, however, that the company offered one of the positions to a non-employee of the company who happened to be a personal friend of CEO Jerry McConnell.

The Western Regional Sales Manager position was the last to be filled. While the position was still vacant, Dews asked his supervisor, Dan Holland, if he could be considered for the position. Holland stated that the employee had to live in the western part of the country because the company had not appropriated relocation funds for the position. However, Clement, the candidate who ultimately received the job, lived in Chicago, Illinois at the time the company selected him for the position.

As part of the massive 1996 downsizing, A.B. Dick eliminated Dews' government sales position. Dan Holland, Dews' supervisor, absorbed Dews' position along with the responsibilities of two other employees who had reported to Holland. Of the three who had reported to Holland, A.B. Dick retained Dews only. A.B. Dick offered Dews the position of Distribution Manager at his current salary even though this new position ordinarily paid less than Dews' former position. Dews accepted the position and worked for A.B. Dick until he voluntarily resigned in September 1996 after concluding that he had exhausted all possible promotional opportunities at the company.

On November 20, 1996, Dews filed a charge with the EEOC alleging, among other things, that A.B. Dick denied him promotions during his career based on his race. After receiving his "right to sue" letter from the EEOC, Dews filed suit on August 29, 1997, alleging that Dick violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, and Ohio Revised Code § 4112, *et seq* by failing to promote him to a District Sales Manager position in 1995 and to a Regional Sales Manager position in 1996 because of his race. Dews

further claimed that his resignation in September 1996 was a constructive discharge. Finally, Dews alleged that he endured a racially hostile work environment, lost income, and suffered emotional distress as a result of A.B. Dick's actions.[1]

Dews learned of the 1995 Northeast District Sales Manager vacancy and the surrounding circumstances when he deposed Schwebke one week before the close of discovery. Dews then sought to amend his complaint to allege that he was not promoted to this 1995 Northeast DSM position because of his race. Dews complained in his Memorandum in Support of his Motion for Leave to File an Amended Complaint that Kukla and Peterson's proffered justification for not promoting him to the Central DSM position - that he lacked management experience - was inconsistent with the company's decision to promote Schwebke directly from his entry-level sales representative position to the Northeast DSM position. Dews also filed a Motion to Extend Discovery to inquire as to the circumstances surrounding the hiring of the 1995 Northeast

---

[1] In his complaint, Dews alleged the following regarding the first 1995 District Sales Manager position: (1) Kukla represented to Dews sometime during or around the time of his interview that the position would likely go unfilled; however, shortly thereafter Kukla hired Mike Dregalla; and (2) his qualifications were far superior than Dregalla's. Regarding the 1996 Regional Sales Manager positions, Dews asserted that (1) all six RSMs hired were Caucasian males; (2) when he expressed an interest in one of the RSM positions, his boss, Dan Holland, told him he was "lucky to have a job" and did not grant Dews an interview; (3) he possessed far superior qualifications to all the successful RSM candidates but for Ken Johnson, to whom he was equally qualified; he had directly competed with all of the successful candidates except Mike Dregalla as fellow sales representatives and managers, and that he had consistently outperformed the successful candidates in virtually every category of A.B. Dick sales and management for the years leading up to 1996; (4) his competence was evidenced by the fact that he received numerous sales awards, and was ranked #2 in the country for two years in a row while Sales Manager, and #1 in the country as Branch Manager in 1992; (5) Dick did not have standard procedures for posting jobs and accepting applications and that the hiring process for the RSM positions was conducted by word of mouth only; and (6) in addition to being denied lucrative promotions, he was subjected to racial slurs from managers and fellow employees throughout his career with A.B. Dick.

---

b) His *not* applying and *not* being considered should apparently be held to be the same as applying and being considered because the job was not posted, even though management had no intention of considering, and did not consider, any persons at the level Dews occupied.

The cases cited by the court do not support this holding.

*Carmichael v. Birmingham Saw Works* involved a classic employment discrimination situation of a company that had hired few blacks and had generally restricted those to janitorial and repair shop jobs. 738 F.2d 1126, 1131 (11th Cir. 1984). The promotion at issue in *Carmichael* was only one part of a claim of pervasive discrimination. The promotion had gone to a white employee who held a comparable position to the plaintiff and had less seniority. In those circumstances, the waiver of the requirement of a formal application or expression of interest was sensible. Today's case involves a general restructuring where management had decided to restrict consideration to certain levels. To allow plaintiff to meet the requirement of consideration simply because he would have liked to have had the job is a far stretch from the situation in *Carmichael*.

Similarly, in *Kehoe v. Anheuser-Busch,* 96 F.3d 1095, 1104-05 & n.13 (8th Cir. 1996), management knew that it was abolishing plaintiff's job as a sports promotion coordinator, but plaintiff did not. Management knew that a comparable position was available, but did not inform plaintiff or consider him for that position. In those peculiar circumstances, the court did not overturn a jury verdict for the plaintiff based on the failure to apply. Again, *Kehoe* is not comparable to our case. Rather, the comparable case would be where some employee further down the chain of command in *Anheuser-Busch* decided that he wanted the open job when it had indeed been given to Kehoe because of his comparable experience. *Kehoe* does not stand for the proposition that there is a waiver of the application and consideration portions of a prima facie case in all cases where a job is not posted. Thus, precedent does not require, or even support, today's expansive holding.

## DISSENT

BOGGS, Circuit Judge, dissenting. I dissent from the court's holding today, because it establishes a general rule that any member of a protected class who is doing an adequate job in his current position makes out a prima facie case of discrimination whenever some desirable position is filled by anyone outside the protected class. This holding expands a sensible position taken by some other circuits – that an actual application is not necessary to make out a prima facie case, where the existence of an opening is only revealed to certain favored persons *in a comparable status* – and expands it to cover all cases of promotions, whatever the logic for filing them.

Mr. Dews had a lengthy and successful career with A.B. Dick. He had been retained and treated favorably during several previous reorganizations that had affected A.B. Dick, as with many large companies in recent history. He now claims that he may pursue a discrimination claim because he did not receive one of six Regional Sales Manager positions that the company created in 1996 in response to business needs. There is no claim that the reorganization itself had any racial component or was in any way pretextual.

The company's undisputed evidence is that the six positions were ultimately filled by four persons currently having geographical responsibility (then termed District Sales Managers) and two persons with national responsibility. Dews's responsibilities, while considerable, were at a lower level. Under today's holding, Dews is considered to have made out a prima facie case because:

a)  He was doing an adequate job in his current position ("meeting the employer's legitimate expectations"), thus putatively making him qualified for the position he now identifies; and

District Sales Manager. The Magistrate Judge denied both of Dews' motions. The district court upheld the Magistrate's recommendation, determining that any amendment to the complaint would be futile and would not survive a motion to dismiss because the 1995 claims were time-barred.

A.B. Dick moved for summary judgment, arguing that Dews failed to establish a *prima facie* case of employment discrimination because he was not qualified for the position of District Sales Manager in 1995. The company further argued that since Dews had never held a District Sales Manager position, he lacked the requisite qualifications to be a Regional Sales Manager. In his Memorandum in Opposition to Defendant's Motion for Summary Judgment, Dews countered that he was qualified for the 1996 Regional Sales Manager position, and that A.B. Dick failed to promote him to District Sales Manager in 1995 because of racial discrimination.

The district court granted summary judgment to A.B. Dick for all of Dews' claims. The court refused to consider the 1995 claims, having previously ruled they were time-barred. The court rejected Dews' constructive discharge claim, finding that Dews produced no evidence that he was subjected to conditions "so difficult or unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." J.A. at 20 (citing *Easter v. Jeep Corp.*, 750 F.2d 520, 522-23 (6th Cir. 1984)). According to the court, Dews failed to satisfy the elements of a "failure to promote" *prima facie* case under the *McDonnell Douglas* burden-shifting model for the 1996 Regional Sales Manager position. Finally, the court determined that Dews failed to establish pretext. Dews now appeals the grant of summary judgment and the denial of his motion for leave to amend the complaint.

## II.

We review a district court's grant of summary judgment *de novo*. *See E.E.O.C. v. Prevo's Family Market*, 135 F.3d 1089, 1093 (6th Cir. 1998). An entry of summary judgment can be upheld only if "the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a fact to be material, it must affect the outcome of the suit, as "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id*. Like the district court, this Court must view the entire record in a light most favorable to the party opposing summary judgment, and draw all reasonable inferences in that party's favor. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986).

### A. 1996 Regional Sales Manager Positions

To establish a *prima facie* claim of racial discrimination based on a failure to promote under Title VII of the Civil Rights Act of 1964,[2] a plaintiff generally must demonstrate that: (1) he is a member of a protected class; (2) he applied and was qualified for a promotion; (3) he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions. *See Betkerur v. Aultman Hosp. Ass'n*, 78 F.3d 1079, 1095 (6th Cir. 1996); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982). After a plaintiff creates a presumption of discrimination by establishing a *prima facie* case, a defendant may rebut the presumption by proffering a legitimate, nondiscriminatory reason for its decision. The plaintiff then bears the burden of showing that the defendant's proffered reason is pretextual. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510-11 (1993).

---

[2]The standards for Title VII are equally applicable to Dews' claims under 42 U.S.C. § 1981 and O.R.C. § 4112. *See Boutros v. Canton Reg. Transit Auth.*, 997 F.2d 198, 202-03 (6th Cir. 1993); *Plumbers & Steamfitters Joint Apprenticeship Comm. v. Ohio Civil Rights Comm.*, 421 N.E.2d 128, 131, 66 Ohio St.2d 192, 196 (Ohio 1981).

### B. 1995 District Sales Manager Positions

The Court declines to address the district court's denial of Dews' motion to amend the Complaint to add one of the 1995 claims as well as A.B. Dick's argument that this Court lacks jurisdiction over Dews' 1995 claims. In December 1998, Dews filed a second Complaint alleging, among other things, that A.B. Dick discriminated against him on the basis of race for failing to promote him to the 1995 and 1996 DSM and RSM positions. These claims are identical to the ones currently at issue. A.B. Dick has asserted that the statute of limitations has expired as an affirmative defense to the 1995 RSM claims. The case has been stayed by the district court pending the outcome of this appeal.

After this second Complaint was filed, the Ohio Supreme Court struck down the legislative act which had shortened the statute of limitations for civil employment discrimination actions from six to two years. *See State ex rel. Ohio Academy of Trial Lawyers v. Sheward*, 86 Ohio St.3d 451 (1999). We think it appropriate for the district court now to revisit the statute of limitations issue for both 1995 DSM positions in light of the Ohio Supreme Court's decision in *Sheward*. Doing so renders it unnecessary for us to consider the parties' various arguments regarding the district court's previous rulings on the 1995 claims. The parties also would likely benefit from this more efficient allocation of judicial resources, as the same district court would manage the proceedings upon remand for the 1996 RSM claims and for the 1995 DSM claims.

### III.

Accordingly, we **REVERSE** the district court's summary judgment regarding Dews'1996 Regional Sales Manager claims and **REMAND** for trial. However, we decline to address the 1995 District Sales Manager claims with the expectation that those claims will be ruled upon in Dews' second case against A.B. Dick, which is currently pending before the district court.

for the Regional Sales Manager position because he was not previously a District Sales Manager fails because that fact has no bearing on whether Dews was meeting the company's legitimate expectations. Resolving all inferences in Dews' favor, there is at least a genuine issue as to whether Dews was objectively "qualified" for the promotion, irrespective of his job title at the time. Thus, for the 1996 Regional Sales Manager positions, Dews has met his evidentiary burden at the summary judgment stage for establishing the *prima facie* case. *See Hicks*, 509 U.S. at 509-10("If . . . reasonable minds could *differ* as to whether a preponderance of the evidence establishes the facts of a [Title VII] prima facie case, then a question of fact *does* remain, which the trier of fact will be called upon to answer.")(emphasis in original).

We also find that Dews has produced sufficient evidence to withstand summary judgment on the issue of pretext. The evidence suggests that A.B. Dick's proffered explanation for its failure to promote Dews may not have actually motivated its conduct. The company states that an employee's previous promotion to a District Sales Manager position, not qualifications, formed the basis of its promotion criteria for the Regional Sales Managers positions. Yet the company considered and hired a friend of the CEO as a Regional Sales Manager even though the person was not a District Sales Manager or even a company employee at the time. Moreover, Holland told Dews that the company would consider and select as Western RSM only an employee already living in the western part of the country. Yet the company ultimately selected Chicago-based Morris Clement for the position. These facts present a genuine issue as to whether A.B. Dick's nondiscriminatory justification for refusing to consider and ultimately promote Dews is a pretext for discrimination. Accordingly, we conclude that Dews has offered sufficient evidence of the prima facie case and pretext to defeat summary judgment for the 1996 Regional Sales Manager claims.

A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir. 1994). If a plaintiff can show that the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir. 1997). Nevertheless, the ultimate burden of proof to show discrimination remains on the plaintiff at all times. *Hicks*, 509 U.S. at 511; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253-56 (1981).

The first and fourth elements of the *prima facie* case are not in dispute. However, the district court concluded that Dews failed to establish prongs two and three because he did not apply for the RSM positions and that A.B. Dick never considered him for those positions. We disagree with the court's reasoning. The court noted that "[t]he parties apparently agree that Defendant filled the Regional Sales Manager positions without accepting applications and that it did not consider employees for promotion other than those it ultimately promoted." J.A. at 42. The court failed to recognize, however, that it would be impossible for any plaintiff to meet these requirements if the company would not allow him to apply for and be considered for the position. In this case, although Dews learned of the 1996 Western Regional Sales Manager position, there was no formal mechanism through which he could apply; indeed, when he did express interest Holland dissuaded him from pursuing the position. Applying the logic of the district court, even if the company did discriminate against Dews on the basis of his race, he would never be able to prove it successfully if the very act of which he complains -- that the company discriminated against him by not considering him for the promotion -- is a required element of the *prima facie* case.

The Eleventh Circuit recognized this conflict and carved an exception to the requirement that the plaintiff actually prove

that he applied for the promotion. In *Carmichael v. Birmingham Saw Works*, 738 F.2d 1126 (11th Cir. 1984), a black employee brought a Title VII claim which alleged that his employer discriminated against him by not promoting him for certain jobs because of his race. The court held that, although the plaintiff did not apply for the job in question, he

> was not required to ask specifically for that job when he did not know about it and where there was no formal mechanism for expressing his interest . . . Furthermore, when an employer uses such informal methods it has a duty to consider all those who might reasonably be interested, as well as those who have learned of the job opening and expressed an interest.

*Id.* at 1132-33. Relying on *Carmichael*, other courts have reached similar holdings. *See, e.g., Kehoe v. Anheuser-Busch, Inc.*, 96 F.3d 1095, 1105 n.13 (8th Cir. 1996)("[A]lthough it is usually necessary for a plaintiff to show that he applied for an available position, that element of the prima facie case will be excused where he demonstrates that the employer 'had some reason or duty to consider him for the position.'")(citation omitted); *Bernard v. Gulf Oil Corp.*, 841 F.2d 547, 570 (5th Cir. 1988)(holding that "it is not legally sufficient or legitimate for an employer to reject an employee who does not have notice or an opportunity to apply for a promotion"); and *Paldano v. Althin Medical, Inc.*, 974 F.Supp. 1441, 1446 (S.D. Fla. 1996)( "[I]n discriminatory promotion cases, where the employer does not use a notice procedure for posting available promotions an employer has a duty to consider all those who might be interested in a promotion. Otherwise, the lack of a notice procedure could result in vacancy information being available to only one segment of a work force, and would place no check on individual biases").

This exception to the application requirement is significant because in many cases where discriminatory animus truly is at issue, an employer may simply avoid advertising a particular opening so as to avoid controversy among affected

employees. If the plaintiff is not required to show that he applied for the position under these circumstances (a part of prong two), then it also stands to reason that the plaintiff should not be required to show that he was considered for the position (prong three). Rather, in these circumstances, it is sufficient that the plaintiff was passed over despite being qualified for the job.

We are persuaded by the reasoning of *Carmichael*, and therefore hold that in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion. Instead, the company is held to a duty to consider all those who might reasonably be interested in a promotion were its availability made generally known.

As the parties concede that the first and fourth elements of the *prima facie* case are met, and because we hold that Dews does not have to meet the "applied for" component of prong two as well as the "considered for" requirement of prong three, the only remaining issue is whether Dews was qualified for the promotion. The district court did not decide whether Dews was qualified for the 1996 Regional Sales Manager position in the context of the *prima facie* case. Rather, the court accepted A.B. Dick's position that the qualifications of the employees were not the primary factors in its promotion decision, but that the company instead focused on the employees pre-reorganization positions. This Court, however, has held that to be considered qualified for a position an employee must demonstrate that he or she was meeting the employer's legitimate expectations and was performing to the employer's satisfaction. *See Warfield v. Lebanon Correctional Institution*, 181 F.3d 723, 729 (6th Cir. 1999). Dews' qualifications in that regard are not at issue; indeed, the record reflects that A.B. Dick consistently lauded Dews for his performance and retained him even when the company eliminated his positions during restructuring and downsizing. Therefore, A.B. Dick's argument that Dews was not qualified