Shirley **HALEY**, Plaintiff–Appellant,

v.

**GENERAL ELECTRIC COMPANY: International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers, Alf–Cio, Local 703 Defendant/Appellees.**

No. 99–6349.

United States Court of Appeals, Sixth Circuit.

Jan. 23, 2001.

Before DAUGHTREY and MOORE, Circuit Judges, and CARR, District Judge.[1]

## OPINION

JAMES G. CARR, District Judge.

Plaintiff-appellant Shirley Haley ("Haley") appeals the district court decision granting summary judgment to the defendants, General Electric Company ("GE") and Local 703 of the International Union of Electronic, Electrical, Salaried, Machine and Furniture Workers ("Local 703"), on Haley's claims of sexual discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2000e–17, and the Tennessee Human Rights Act, Tenn.Code Ann. §§ 4–21–101—1004. For the following reasons, we AFFIRM the judgment of the district court.

## I. Facts

Shirley Haley was a production worker at GE's Murfreesboro, Tennessee plant

---

1. The Honorable James G. Carr, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

and had been employed there since 1971. (J.A. at 10). As a result of cutbacks at the plant, the great majority of employees have more than twenty years seniority. (*Id.* at 334).

Local 703 is the exclusive collective bargaining representative for GE's maintenance and production workers. (*Id.* at 11). Local 703 and GE have a collective bargaining agreement governing the terms and conditions of employment of GE's maintenance and production workers at the plant. (*Id.* at 334).

Haley was a member of Local 703, serving as a Union shop steward and vice-president for four years in the late 1980s and 1990s, but resigned from Local 703 prior to the lawsuit. Local 703 continued to represent Haley as it does all other hourly employees. (*Id.*).

Pursuant to the collective bargaining agreement, when a job becomes vacant at the plant, GE is required to post a notice of the vacancy. (*Id.* at 307). Any employee interested in the job must submit a job request, or bid, during the period, and current employees have priority for such positions. (*Id.* at 334). The collective bargaining agreement provides that GE must fill the position with: "the [employee] with the necessary qualifications and the most plant service in accordance with Article 28, Section I of the National Agreement." (*Id.* at 54). Article 28 provides:

The Company will to the extent practical, give first consideration for job openings and upgrading to present employees, when employees with the necessary qualifications are available. In upgrading employees to higher rate jobs, the Company will take into consideration as an important factor, the relative length of seniority of the employees which it finds are qualified for such upgrading. (*Id.* at 52).

On July 25, 1997, GE posted a notice of a job opening for the WEB Production Support position (M31X), which involved a manufacturing process used to make a type of motor. (*Id.* at 249). The minimum qualifications for the job were:

1. Must have basic understanding of hydraulics, pneumatics, and AC/DC circuits;

2. Must be able to read and understand machine/equipment drawings;

3. Must be able to draw/sketch tools and fixtures for construction by others;

4. Must demonstrate experience in at least one of the following:

   A. 6 months form W experience;

   B. 6 months winding experience;

   C. 6 maintenance or;

   D. 6 months machine setup & operate. (*Id.*).

Before the announcement was posted, the qualifications for the position were discussed and agreed to by Rob Ladd, the plant's Human Resources Manager, and Brian Christopher, Manager of Shop Operations. (*Id.* at 336). Brian Christopher had complete responsibility for judging the qualifications of the bidders and making the actual hiring decision. (*Id.* at 236).

Six employees submitted bids for the position: Audrey Curray, Shirley Haley, Melvin Roberts, Sonny Stitt, Edward Underwood, and Charles Vandiver. (*Id.* at 336). At each interview, Mary Stacey, Local 703's Chief Steward, sat in with Christopher as a silent observer. (*Id.*).

Christopher developed a system awarding points for each skill a bidder possessed. (*Id.*). He awarded each bidder one to five points based on the extent to which the bidder, in Christopher's estimation, met each of the minimum qualifications listed in the company guidelines. (*Id.*).

Christopher also awarded each bidder one to five points for seven additional factors that he judged would be important for the position. (*Id.*). The seven additional factors included: 1) maintenance; 2) troubleshooting and process improvements; 3) interfacing with the tool room and maintenance; 4) assisting in setup and changeover; 5) cataloguing spare parts and updating manuals; 6) people and leadership skills and 7) performance during closing statement. (*Id.* at 255). Under the point system, a bidder could receive a maximum of fifty-five points. (*Id.* at 337). Haley argues that the same requirements were used by Christopher's predecessor, Tony Arcienega, to evaluate bidders for posted employment opportunities. (*Id.* at 258).

During each of the six interviews, Christopher asked the bidder to explain his or her qualifications, to sketch a part of the WEB Production line, and to give a statement explaining why he or she should get the position. (*Id.* at 337).

Haley and Edward Underwood tied for the highest score with thirty-nine points each. (*Id.* at 195).

Although Christopher believed both Haley and Underwood were qualified for the position, Christopher judged Haley to have more leadership skills and seniority than Underwood. (*Id.*). Christopher awarded Haley the position and posted an announcement in the plant. (*Id.*).

Local 703's president, James Jernigan, and its vice-president, J.O. Jones, approached Christopher and questioned awarding the job to Haley. (*Id.*). Jernigan stated that, although he did not recall his exact statement to Christopher, he was concerned because "the plant was in a complete uproar because they didn't think [Haley] should have the job." (*Id.* at 215). The three men went into Ladd's office as Ladd joined the discussion. (*Id.* at 186).

According to Christopher, the Local 703 officers asked how the decision was made to award Haley the position. (*Id.* at 186). Ladd stated that the officials said that Underwood should have been awarded the job. (*Id.* at 202). Jernigan, however, claimed that he initially believed Audrey Curray should have been awarded the job, and that he never told Christopher that Underwood should have received the promotion. (*Id.* at 218). Jernigan stated that he was concerned the employment decision did not focus enough on the minimum qualifications under company guidelines. (*Id.*).

Both Ladd and Christoper testified that they believed the Local 703 officers were pressuring them to reverse the award of the position to Haley. (*Id.* at 338). According to Ladd and Christopher, Jernigan said he was willing to take this problem "to the street," a reference to a union strike. (*Id.*). Jernigan, however, does not recall using the phrase. (*Id.*).

After the initial meeting, other Local 703 officers approached Christopher and Ladd to protest awarding the position to Haley. (*Id.*). Virginia Jernigan, the Union's Financial Secretary, approached Christopher and accused him of awarding the position to Haley "just because she's pretty." (*Id.* at 277). Mary Stacy, Local 703's shop steward, approached Christopher and argued that Underwood should have been awarded the position. (*Id.* at 338). At some point during the day, Stacy also approached Ladd and stated the position should not have been awarded to Haley. (*Id.*).

On September 3, 1997, Local 703's Executive Board discussed several problems that it was having with GE at an "emergency meeting." (*Id.* at 166). Problem one on the agenda included a discussion about "Qualifications on the M31X job

(necessary qualifications) vs. Seniority (not done right) on Shirley Haley getting the job." (*Id.*). The board unanimously voted to authorize Jernigan to give the company a strike notice over several issues, including the award of the position to Haley. (*Id.*).

Jernigan also filed a grievance with GE on behalf of Audrey Curray. (*Id.* at 339). Jernigan later stated that he could not recall whether Curray had asked for a grievance to be filed, or whether he had approached her about filing the grievance. (*Id.*). Underwood did not approach Local 703 or ask that a grievance be filed on his behalf. (*Id.*).

After the Local 703 officers made their initial protests, Ladd asked Christopher what method he used in awarding the job to Haley. (*Id.* at 200). Ladd specifically disapproved of two of Christopher's methods: (1) his use of a one-to-five point scale to measure an applicant's skills, and (2) his use of the seven additional factors, beyond the posted minimum qualifications, to evaluate bidders. (*Id.* at 201). Ladd believed the subjective criteria should be eliminated, and the award should simply have been made to the employee with the most seniority who met the minimum qualifications. (*Id.*).

Ladd instructed Christopher to drop the point system and use a method based only on the minimum qualifications listed for the job. (*Id.*). Each bidder would be evaluated on whether he met the four minimum qualifications laid out in the original job announcement. (*Id.*). For each qualification, a bidder got a plus or minus (+/-), depending on whether the bidder met the qualification. (*Id.*).

After changing the evaluation process. Christopher compared each bidder to the four minimum qualifications. (*Id.* at 337). Ladd and Christopher determined that no bidder possessed all four minimum qualifications. (*Id.* at 337).

Christopher concluded that Underwood had a basic understanding of hydraulics, pneumatics and AC/DC circuits, and Haley did not meet this requirement. (*Id.* at 34). Underwood also had completed fifty-four hours of vocational training in pneumatics, 114 hours of vocational training in motor controls, fifty-seven hours of vocational training in programmable logic controls, fifty-seven hours of vocational training in basic electricity, sixteen hours of vocational training in basic shop literacy, and seventy-two hours of vocational training in machine shop practice. (*Id.* at 48). In addition, Underwood had completed a vocational course concerning math, gauges and product drawings. Haley had not completed any vocational training in any of these areas. (*Id.*).

Haley admitted that, while she had operated equipment that utilized hydraulic systems, pneumatic systems and AC/DC circuits, she had never worked on the systems or circuits. (*Id.* at 24). She admittedly had no experience in maintenance. (*Id.*).

Underwood had almost two years experience as a Multi–Craft Maintenance Mechanic, a position in which he was responsible for the set-up, maintenance, and repair of many types of equipment. (*Id.* at 48). As a result of his work as Multi–Craft Maintenance Mechanic, Underwood had experience in the set-up, operation, maintenance and repair of hydraulic systems, pneumatic systems and AC/DC circuits. (*Id.*). As a Multi–Craft Maintenance Mechanic, Underwood had experience reading machine and equipment drawings. (*Id.* at 48).

Two bidders, Underwood and Melvin Roberts, were judged to possess three of the four qualifications. (*Id.* at 227). Haley, in contrast, was held to possess only

one qualification. (*Id.* at 340). Christopher and Ladd awarded the position to Underwood, because he had more seniority than Roberts. (*Id.*).

On September 4, 1997, Christopher informed Jernigan of the decision to hire Underwood, and Jernigan asked that the grievance filed on behalf of Audrey Curray be returned. (*Id.*).

On September 8, 1997, Ladd and Christopher told Haley that the WEB Production Support position had been awarded to Underwood. (*Id.*).

Evidence in the record suggests that Local 703 had previously taken action against GE for promoting an employee based on subjective criteria. (*Id.* at 233). Another employee of GE, Lamont Turner, was promoted by GE based on the same subjective criteria of leadership skills and a closing statement. (*Id.*). After Turner was hired, Freddy Phifer filed a grievance for not being awarded the position as the more senior employee. (*Id.*).

Local 703 took action against GE for Turner's promotion. (*Id.*). Local 703 posted a strike notice on March 11, 1997, and waged a three-day strike in April 1997. (*Id.*). GE did not remove Turner from the contested position, which he continues to hold. (*Id.*).

Turner also stated that he believed Haley had been removed from the WEB Production position because she is a female, and that he was treated better by GE because he is a male. (*Id.*).

Haley filed an administrative complaint with the Equal Employment Opportunity Commission. (*Id.* at 7). After determining not to pursue litigation on Haley's behalf, the commission issued a right-to-sue letter. (*Id.*). Within ninety days of the issuance of that letter, Haley filed a complaint in federal district court against both GE and Local 703, alleging illegal sex discrimination in promotion pursuant to Title VII and the Tennessee Human Rights Act. (*Id.*).

The district court granted GE and Local 703's motion for summary judgment. (*Id.* at 333). The district court held Haley had established a prima facie case for discrimination, and GE and Local 703 had provided a legitimate, nondiscriminatory explanation. (*Id.*). After reviewing the evidence, the district court held that Haley failed to demonstrate defendants' explanations were pretexts for discriminatory motives. (*Id.*).

## II. Analysis

█ The Sixth Circuit reviews a district court's grant of summary judgment de novo. *King v. Love,* 766 F.2d 962, 969 (6th Cir.1985). Summary judgment will be affirmed if a review of all the evidence in the record, in a light most favorable to the party opposing summary judgment, shows that there is no genuine issue as to any material fact entitling the moving party to judgment as a matter of law. Fed. R.Civ.P. 56(c). If the evidence is such that a reasonable jury could return a verdict for the nonmoving party, a genuine issue of material fact exists. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

█ Haley alleges that GE failed to promote her to the WEB Production Support position because of her sex. A plaintiff can establish a prima facie claim for failure to promote under Title VII by demonstrating: 1) she is a member of a protected class; 2) she applied and was qualified for a promotion; 3) she was considered for and was denied a promotion; and 4) other employees not in the protected class of similar qualifications received promotions. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1020–1021 (6th Cir.2000). Once a plaintiff establishes a prima facie case, a defendant may rebut the presumption by

showing a legitimate, nondiscriminatory reason for its decision. The plaintiff must then demonstrate that defendant's reason is pretextual. *Id.*

The district court determined that Haley had established a prima facie case. Haley, as a woman, belongs to a protected class. Haley established that she applied and was rejected for a promotion. The record also provides that Haley was qualified for the promotion, as demonstrated by GE's initial decision to hire Haley for the position. Finally, Haley established that Underwood, a similarly-situated male, applied for and was ultimately awarded the promotion.

GE and Local 703 brought forth a legitimate, nondiscriminatory reason for the decision not to promote Haley. GE and Local 703 are bound by contract provisions of the collective bargaining agreement mandating that GE fill vacant positions with employees who possess "the necessary qualifications and the most plant service." (J.A. at 84). GE and Local 703 argue that "necessary qualifications" include only those minimal qualifications deemed essential for performance under company guidelines. GE and Local 703 contend that Haley was not promoted because she was not as qualified as Underwood based solely on the minimum qualifications for the job. The district court correctly determined that defendants' goal of complying with the collective bargaining agreement is a legitimate nondiscriminatory reason for deciding to promote Underwood instead of Haley.

### A. Haley's Sex Discrimination Claim Against GE

For the first contention of error, Haley argues the district court erroneously held that she failed to establish GE's proffered reason was pretextual. Pretext is established by showing defendant's non-discriminatory reason: 1) had no basis in fact; 2) did not actually motivate defendant's challenged conduct; or 3) was insufficient to warrant the challenged conduct. *Dews*, 231 F.3d at 1020. In order to establish pretext under any theory, a plaintiff must produce "sufficient evidence from which the jury may reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chem. Co.*, 29 F.3d 1078, 1083 (6th Cir.1994). If the plaintiff can show the defendant's proffered, nondiscriminatory reason is pretextual, the trier of fact may infer discrimination. *Dews*, 231 F.3d at 1021.

Haley has not produced evidence demonstrating that GE's proffered reason had no basis in fact. GE alleged Underwood was promoted because he possessed three of the four minimum qualifications, while Haley met only one of the four. Underwood also had extensive training as to the three qualifications. Haley does not contest these facts.

Although Christopher initially judged Haley to have better leadership and people skills, GE argued it could only base its decision on the minimum qualifications found in the collective bargaining agreement. Haley does not dispute that GE was bound by the collective bargaining agreement to hire employees based on the minimum qualifications outlined in the contract.

In Haley's brief, Haley argues that Christopher "still believed [Haley] was the best person for the position even after the re-evaluation of the applicants." (Brief of Appellant, at 12). The statement is not supported by evidence in the record. Christopher testified that although Haley deserved the promotion "from a personal standpoint." (J.A. at 190), Haley was not the most qualified individual from a technical standpoint. (*Id.* at 181, 184, 190).

The majority of Haley's evidence is offered to demonstrate that GE was not actually motivated by its stated justification. The evidence, however, is insufficient to demonstrate that GE's nondiscriminatory reason was pretextual.

Haley provides statements from two GE employees concerning past decisions to hire employees that were also challenged by Local 703. Linda Walls, an employee of GE, stated that, on May 10, 1995, GE initially awarded her the position of WEB Production Support. (*Id.* at 231). After the decision was posted, Local 703 put up a strike notice. (*Id.*). Walls was later informed that she no longer had the position. (*Id.*). The job was awarded to a male, Rick Adams, who refused to take the position based on the controversy concerning Walls. (*Id.*). Walls claims the position was eventually cancelled. (*Id.*). Walls does not, however, provide any information about the criteria initially used by GE to hire her for the position, or what basis Local 703 provided for the grievance.

Similarly, Lamont Turner alleges that in 1996 he interviewed with GE for the position of Form T Tech. (*Id.* at 233). He stated he was asked about his leadership skills and gave a closing statement during the interview. (*Id.*). After Turner was awarded the position, Local 703 posted a strike notice, arguing the position should have been awarded to a more senior person, and presumably an employee evaluated under only the minimum qualifications. (*Id.*). Local 703 waged a three-day strike in April of 1997. (*Id.*). GE did not remove Turner from the position which he currently holds. (*Id.*).

Haley alleges that the statements by Walls and Turner evidence a pattern by GE to stand by its decision to hire only male applicants, after Local 703 expresses disagreement over an employment choice, while replacing female applicants. Haley argues that the evidence is enough for a rational fact finder to infer that GE lied about its proffered reason for failing to promote her. We disagree.

Walls did not provide any information concerning the circumstances surrounding her removal from the position. Walls does not allege that the male hired to replace her was less qualified for the position. Without more information, the court cannot assume that Walls was not promoted based solely on her sex.

The statements by Walls and Turner instead provide support for GE's contention that Local 703 was active in protesting employment choices that were not based solely on the minimum qualifications and seniority characteristics. Local 703 filed a grievance after Turner was hired based on the subjective criteria of leadership skills and a closing statement. Local 703 also went on strike for three days following the decision to hire Turner. GE could, therefore, be legitimately concerned that Local 703 would strike again based on GE's reliance on subjective criteria outside the collective bargaining agreement during the interview process.

In their affidavits, Walls and Turner also state their opinions of GE's promotion practices. Walls asserted: "My opinion after twenty-nine years of service is that General Electric will not allow women to have the top paid positions." (J.A. at 231). Turner stated: "I believe that General Electric took the job of WEB Production Support from Shirley Haley because she is a female." (*Id.* at 234). These conclusory statements, however, are not helpful to Haley's case. Without more, mere opinions expressed by co-workers who have no direct involvement in the decision-making processes have no probative value as to GE's alleged discriminatory intent.

The statements, therefore, fail to demonstrate that GE's decision to promote someone other than Haley was "more likely than not" motivated by Haley's sex and not by GE's desire to avoid a Union strike and act in conformity with the terms of the Local 703 contract.

Haley provides as evidence of discriminatory motive an alleged statement of a union official, Mrs. Virginia Jernigan, who after learning that Haley had initially been offered the promotion, commented that she was disappointed that Christopher would award the position to Haley because she was pretty. (*Id.* at 191–192). The comment is insufficient to demonstrate discriminatory intent. Mrs. Jernigan did not participate in the employment decision for the WEB Production Support position. This court has ruled that "isolated discriminatory remark[s] made by one with no managerial authority over the challenged personnel decisions" does not demonstrate discrimination unless the speaker participated meaningfully in the employment decision. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 354–5 (6th Cir. 1998). In addition, the statement does not suggest a discriminatory bias against women, but rather suggests Haley's status as a woman played an unfairly favorable role in the initial decision.

Haley also provides statistical evidence that GE discriminated against women in hiring and promotion. The evidence states that only one out of thirty-six of the highest paying jobs at GE is held by a female. (J.A. at 172–173). Although the dissent relies on the statistic as part of its reasoning that Haley established a genuine issue of material fact, Haley has not provided any correlation between this figure and the relevant labor market. As the district court correctly pointed out. Haley must provide information concerning the applicable labor market in order to place the statistic in its proper context. *Hartsel v. Keys,* 87 F.3d 795, 799 n. 1 (6th Cir.1996).

From the evidence, a reasonable jury could not infer GE lied about its proffered reasons for failing to promote Haley. The district court's grant of summary judgment in favor of GE is, therefore, affirmed.

**B. Haley's Claim Against Local 703**

█ Haley alleges that Local 703's protest of GE's initial decision to promote Haley was based on her status as a female. Haley claims that Local 703 had no basis for objecting to her promotion other than for seniority, and Haley had more seniority than Underwood.

Local 703 argues that it protested Haley's promotion because, during the interview process, Christopher considered factors other than those agreed upon in the collective bargaining agreement. The collective bargaining agreement between Local 703 and GE explicitly states hiring decisions should be based on both an applicant's seniority and consideration of necessary qualifications. As Local 703 demonstrated, Underwood is more qualified based on the minimum qualifications for the position. Local 703 legitimately challenged GE's decision because Haley was less qualified than Underwood under the terms of the collective bargaining agreement.

█ Haley also argues that a Local 703 official exhibited discriminatory bias by filing a grievance for another female employee, Audrey Curray, after Haley was awarded the promotion, but never advocating Curray for the position. Local 703 filed the grievance because Curray had more seniority. Haley argues that, although Mr. Jernigan testified that he had been an advocate for Audrey Curray, he was never an advocate for a female employee.

The union members' actions are supported by the collective bargaining agreement. The union members filed a grievance on behalf Curray, who had more seniority for the job awarded to Haley. Curray, however, was the lowest-scoring applicant on both the minimum qualification component of the evaluation and under the additional subjective factors added by Christopher. (J.A. at 59). Local 703 was authorized to accept Underwood for the position, because he was the most qualified employee under the minimum qualifications for the contract. Local 703 was, therefore, justified in its decision not to advocate Curray for the position, because Underwood was the most qualified under the terms of the collective bargaining agreement.

Local 703's actions towards both Walls and Turner also do not indicate a discriminatory motive. Haley has not provided any circumstances surrounding GE's failure to promote Walls demonstrating a discriminatory bias. As mentioned above, Haley does not allege that Walls was more qualified than the male applicant later chosen for the position. In addition, Local 703 was justified to protest GE's decision to hire Turner, which was based on the subjective evaluation factors not agreed upon by the company and Local 703. Haley has not alleged sufficient facts from which a rational juror could find a discriminatory motive of Local 703 against Haley.

■ Similarly, the district court properly granted defendant's summary judgment claim as to Haley's claim under the anti-discrimination provisions of the Tennessee Human Rights Act, because the claim is evaluated in the same manner as Title VII claims. *Tetro v. Elliott Popham Pontiac, Oldsmobile, Buick, and GMC Trucks,* 173 F.3d 988 (6th Cir.1999); *Campbell v. Florida Steel Corp.,* 919 S.W.2d 26, 31 (Tenn.1996).

■ Haley also argues on appeal that the district court cited the *Gagne v. Northwestern Nat'l Ins.,* 881 F.2d 309 (6th Cir. 1989) decision applying the "pretext plus" standard, a standard overruled by the Supreme Court in *St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Although the district court applied the improper standard, it is harmless error, because the court reviews a grant of summary judgment de novo. *Camper v. Federal Express Corp.,* 2000 U.S.App. LEXIS 6802, *4 (6th Cir.2000) ("because the appropriate standard in reviewing the district court's denial of reconsideration is de novo, it is harmless error that the district court improperly used a different standard of review in its denial").

### III.  Conclusion

For the foregoing reasons, we AFFIRM the judgment of the district court.

KAREN NELSON MOORE, Circuit Judge, concurring in part and dissenting in part.

I agree with the majority that Haley established a prima facie case that GE failed to promote her because of her gender. Defendant GE's proffered justification was that it was following the collective bargaining agreement with the union that required promotion of the employee with the most plant service who met the minimal qualifications for the job. Haley proffered evidence that GE, when faced with union opposition to an employment decision, continues to support its selection if he is male, as in the case of Lamont Turner, but discards its selection if she is female, as in the cases of Linda Walls and plaintiff Shirley Haley. Moreover Haley presented evidence that only one out of thirty-six of the highest paying jobs at GE was held by a female. Under these circumstances Haley has presented a genuine issue of mate-

rial fact concerning whether GE's asserted reason was pretextual. I would allow Haley's claim against GE to withstand GE's summary judgment motion and respectfully dissent from the contrary conclusion of the majority.