William **GROSJEAN**, Plaintiff,

v.

**FIRST ENERGY CORPORATION, et al., Defendants.**

No. 3:01CV7213.

United States District Court, N.D. Ohio, Western Division.

Feb. 20, 2002.

John D. Franklin, Law Office of John D. Franklin, Toledo, OH, for Plaintiff.

Denise M. Hasbrook, Nancy Patrick Greeley, Roetzel & Andress, Toledo, OH, for Defendants.

## ORDER

CARR, District Judge.

Plaintiff William Grosjean brings this action against Defendants First Energy Corporation and Toledo Edison Energy claiming he was discriminated against on the basis of age. This court has jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367. Pending is defendants' motion for summary judgment pursuant to Fed. R.Civ.P. 56(c). For the following reasons, defendants' motion shall be granted.

## BACKGROUND

Plaintiff began working for Defendant Toledo Edison Energy in 1970. Plaintiff alleges that in March of 2000, plaintiff was removed from a supervisory position fol-

lowing an unfavorable evaluation. Plaintiff alleges he was denied a salary bonus while a younger employee received the bonus for work both plaintiff and the younger employee performed. Plaintiff further alleges that similarly situated younger employees received higher salaries.

After sending correspondence to the director of the First Energy Bayshore Plant and filing an internal discrimination complaint complaining of age discrimination during April of 2000, plaintiff reapplied for his former supervisory position. Plaintiff was not placed in the position. Plaintiff subsequently filed a charge with the Ohio Civil Rights Commission and Equal Employment Opportunity Commission alleging that defendants discriminated against him on the basis of age.

Plaintiff brings this action alleging that defendants violated the Age Discrimination in Employment Act, 29 U.S.C. § 626, and Ohio Revised Code § 4112.02(A) and (N) through a demotion, denial of a promotion, and denial of bonuses.

## STANDARD OF REVIEW

Summary judgment must be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. *Id.* at 323, 106 S.Ct. 2548. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (quoting FED.R.CIV.P. 56(e)).

Once the burden of production shifts, the party opposing summary judgment cannot rest on its pleadings or merely reassert its previous allegations. It is insufficient "simply [to] show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, Rule 56(e) "requires the nonmoving party to go beyond the [unverified] pleadings" and present some type of evidentiary material in support of its position. *Celotex*, 477 U.S. at 324, 106 S.Ct. 2548.

In deciding the motion for summary judgment, the evidence of the non-moving party will be believed as true, all doubts will be resolved against the moving party, all evidence will be construed in the light most favorable to the non-moving party, and all reasonable inferences will be drawn in the non-moving party's favor. *Eastman Kodak Co. v. Technical Servs., Inc.*, 504 U.S. 451, 456, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992). Summary judgment shall be rendered only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED.R.CIV.P. 56(c).

## DISCUSSION

Plaintiff claims defendants violated that Age Discrimination in Employment Act, 29 U.S.C. § 626, and Ohio Revised Code § 4112.02(A) and (N) by demoting him, denying him a promotion, and denying him bonuses.

■ When a plaintiff does not have direct evidence of age discrimination, an age discrimination claim involves the three-part framework first established in *McDonnell Douglas v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

*Scott v. Goodyear Tire & Rubber Co.,* 160 F.3d 1121 (6th Cir.1998). The plaintiff must prove a prima facie case of discrimination: 1) plaintiff was at least 40 years old at the time of the alleged discrimination; 2) plaintiff suffered an adverse employment action; 3) plaintiff was otherwise qualified for the position lost or not gained; and 4) after plaintiff was rejected or terminated, a substantially younger applicant was selected. *Burzynski v. Cohen,* 264 F.3d 611, 622 (6th Cir.2001) (citing *Barnett v. Dep't of Veterans Affairs,* 153 F.3d 338, 341 (6th Cir.1998)); *Manzer v. Diamond Shamrock Chems. Co.,* 29 F.3d 1078, 1081 (6th Cir.1994).

■ Once the plaintiff proves a prima facie case, the defendant must put forth a legitimate nondiscriminatory reason for its conduct. *Scott,* 160 F.3d at 1126 (citing *Manzer,* 29 F.3d at 1082). To recover, the plaintiff then must prove the defendant's legitimate nondiscriminatory reason is a pretext for discrimination. *Id.* (citing *Manzer,* 29 F.3d at 1083).

Defendants contend plaintiffs age discrimination claim must fail because: 1) plaintiff has not exhausted his administrative remedies; 2) plaintiff cannot establish his prima facie case because no adverse employment action was taken and plaintiff was not qualified; and 3) plaintiff cannot prove that defendants' articulated legitimate nondiscriminatory reasons were a pretext for discrimination. Because I agree that plaintiff cannot prove that defendants' legitimate nondiscriminatory reasons were a pretext for age discrimination, I decline to address defendants' initial arguments.

### I. Pretext

■ A plaintiff establishes pretext by showing the defendant's legitimate nondiscriminatory reason: 1) had no basis in fact; 2) did not actually motivate the defendant's actions; or 3) was insufficient to warrant the defendant's actions. *Manzer,* 29 F.3d at 1084.

The first method of establishing pretext requires the plaintiff to show the facts necessary for the defendant's legitimate nondiscriminatory reason never occurred or were false. *Id.* The second method of proving pretext requires the plaintiff to establish that the weight of the circumstantial evidence makes it more likely than not that the defendant's legitimate nondiscriminatory reason is a pretext. *Id.* ("In such cases, the plaintiff attempts to indict the credibility of his employer's explanation by showing circumstances which tend to prove that an illegal motivation was *more* likely than that offered by the defendant."). The third method of establishing pretext requires the plaintiff to show that other employees, such as employees not in the protected class, did not suffer adverse employment action for the same conduct the plaintiff engaged in. *Id.*

To meet any pretext theory, "the plaintiff must produce sufficient evidence from which the jury may reasonably reject the employer's explanation." *Id.* at 1083. If the plaintiff shows the defendant's legitimate nondiscriminatory reason is a pretext for discrimination, the jury may infer discrimination. *Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000) (citation omitted). The plaintiff retains the ultimate burden of proof at all times. *Id.* (citation omitted).

■ Defendants provided numerous legitimate nondiscriminatory reasons in an affidavit by Kenneth J. Dresner, plaintiff's supervisor since May 12, 1998. Defendants contend that action was not taken against plaintiff because of any one reason; a combination of issues resulted in plaintiff's transfer. Dresner met with plaintiff three times before plaintiff was transferred.

On July 28, 1999, Dresner discussed several occurrences for correction in the future: 1) plaintiff's failure to document an employee's sleeping on the job; 2) plaintiff's complaint to the safety director about extensive hours without first consulting Dresner; 3) excessive time required to unload trains due to plaintiff's failure to schedule enough personnel; 4) undermining of the company's position by supporting the Union's position in front of Union members; 5) plaintiff's failure to defend the company during allegations that a structure condition looked bad; 6) plaintiff's failure to defend the company when an employee expressed safety concerns or alert the employee to the fact that the safety concerns were corrected; 7) plaintiff's failure to resolve a conflict involving bulldozer operators who wanted to smoke in their vehicles; and 8) plaintiff's failure to reject vacation requests once they were excessive.

On November 4, 1999, Dresner again met with plaintiff to discuss: 1) plaintiff's scheduling of overtime when unnecessary; 2) the docking of an employee's pay for his failure to arrive on time; 3) plaintiff's repeated departure from a fact-finding meeting where he was a necessary witness; and 4) plaintiff's failure to assume leadership duties by referring an employee to Dresner to discuss release of the employee from restricted duty.

On December 15, 1999, Dresner met with plaintiff to discuss: 1) an employee's failure to obtain new safety shoes by November 26, 1999; 2) plaintiff's grant of unpaid time off to an employee without a doctor's slip; and 3) Dresner's overall dissatisfaction with plaintiff's work performance. Defendants contend plaintiff cannot prove these reasons were a pretext for discrimination. Plaintiff argues he can prove pretext by showing these reasons had no basis in fact, actually did not motivate defendants' actions, or were insufficient to warrant defendants' actions.

Plaintiff initially argues that Dresner never provided written documentation of performance deficiencies to plaintiff and therefore failed to follow company procedures under the Performance Approval Program.[1] Plaintiff contends this failure is sufficient to create a jury issue on pretext.

As defendants point out in their reply brief, the company policy does not include a requirement that supervisors give employees written documentation of performance deficiencies. The policy states that written documentation is required, but the language clearly does not require supervisors to give such documentation to employees. Plaintiff, therefore, cannot establish pretext through the failure to provide him with written documentation of his performance deficiencies because he has not shown that defendants failed to follow company policy or procedures.

Plaintiff's brief next spends much time refuting each of defendants' legitimate nondiscriminatory reasons as listed in Dresner's affidavit. Defendants contend that plaintiff challenges insignificant facts and discrepancies, and therefore, a genuine issue of material fact does not exist.

---

1. The policy plaintiff refers to provides:

Supervisors should provide feedback and coaching to employees on an ongoing basis during the performance year to review problems, discuss opportunities for enhanced performance, discuss any changes that occur, provide guidance and support, determine development needs, and recognize achievement. An employee should be notified as soon as possible if his performance expectations are not met. Documentation is required so that employees and supervisors can track progress and accomplishments.
(Doc. 40 at 12) (emphasis omitted) (citations omitted).

Dresner's affidavit states that he had doubts as to plaintiff's supervisory judgment beginning in 1998. Plaintiff argues that Dresner later admitted that this statement was false and could not remember an example of a problem with plaintiff's judgment in 1998. Plaintiff, however, was not given a negative evaluation in 1998; the negative evaluation occurred in 1999. While plaintiff points out a discrepancy between the Dresner's affidavit and deposition, the discrepancy necessarily does not show defendants' actions were a pretext for discrimination.

Plaintiff disputes Dresner's allegation that plaintiff paid Jose Salazar for one hour that Salazar did not work. Plaintiff points out that Dresner later admitted that Salazar was only 0.8 hours late and was docked pay for that time. The facts that Dresner initially believed Salazar to be one hour late, and Salazar actually was 0.8 hours late, and Dresner initially believed that Salazar was not docked pay are minor discrepancies that hardly could be genuine issues of material fact. Plaintiff, furthermore, has not challenged whether Dresner honestly held these beliefs. *See Smith v. Chrysler,* 155 F.3d 799, 807 (6th Cir.1998) (employer's legitimate nondiscriminatory reason for its action is not a pretext for discrimination if the reason is "honestly held").

Plaintiff disputes Dresner's affidavit allegation that plaintiff scheduled unnecessary overtime for Barbara Mowka. Plaintiff argues that he informed Mowka, at the time she committed to working, that he would not replace her if she did not work. Plaintiff states, "After she committed to coming in, Mowka apparently called off.... According to [plaintiff], he made his point with Mowka and the union by not replacing the overtime." (Doc. 40 at 28). Plaintiff fails to explain what he means by "his point." He does not, however, dispute that the overtime was unnecessary—the basis for defendants' nondiscriminatory reason.

Plaintiff also contends that he did not know of Dresner's dissatisfaction with the way plaintiff addressed the situation until his March 2000 performance evaluation meeting. Plaintiff, however, does not provide evidence that Dresner was required to inform plaintiff of such dissatisfaction before the March 2000 performance evaluation meeting.

Plaintiff disputes Dresner's affidavit allegation that plaintiff did not require medical documentation from Pat Barrett for his absences from work on November 22, 1999 and December 6, 1999. Plaintiff states that Dresner later admitted that Barrett provided medical documentation for one absence. Plaintiff also disputes the allegation that he gave Barrett time off without a medical excuse and states that a younger supervisor was not disciplined for giving Barrett time off without a medical excuse.

Plaintiff does not dispute defendants' main argument though:

> Accordingly, there were two distinct failures on Mr. Grosjean's part. First, *he should not have given Mr. Barrett time off at all* in the first instance even though he had a doctor's slip because the appointment should have been scheduled during off-hours. In addition, Grosjean failed to receive a sick slip at all for Mr. Barrett's second absence.

(Doc. 45 at 3–4) (emphasis added). Plaintiff does not dispute that he should not have given Barrett time off at all. The allegation that a younger supervisor was not disciplined for the same conduct does not demonstrate pretext here because plaintiff was Barrett's assigned supervisor. (Doc. 45 at 4). The situation with Barrett's medical documentation for absences does not, therefore, demonstrate pretext.

Plaintiff also disputes Dresner's affidavit allegation that plaintiff had difficulty communicating unfavorable decisions to employees because two employees approached Dresner after plaintiff informed them of a decision. Plaintiff states that Dresner later admitted he speculated as to the reason the employees approached him. Dresner stated that he speculated plaintiffs inability to communicate unfavorable decisions to subordinates was the reason the employees came to him because they must have known he was the person who saw them in the wrong work location. Again, plaintiff does not dispute whether Dresner honestly believed plaintiff's inability to communicate the decision caused the employees to come to him. *See Smith,* 155 F.3d at 806 ("[S]o long as the employer honestly believed in the proffered reason given for its employment action, the employee cannot establish pretext even if the employer's reason is ultimately found to be mistaken, foolish, trivial, or baseless.").

Plaintiff spends much time stating that a younger supervisor, Gallagher, was treated differently than plaintiff. Plaintiff contends that Gallagher was not disciplined when employees approached Dresner after Gallagher spoke with them. Plaintiff alleges that Gallagher was given credit for good performance while plaintiff was evaluated negatively and plaintiff and Gallagher supervised the same employees, performed the same job duties, and dealt with the same personnel problems. Plaintiff contends that Dresner kept a secret file on plaintiff but did not do so for Gallagher.

Plaintiff, however, does not dispute defendants' argument that while Gallagher and plaintiff had the same duties, they did not work on the same shift after 1998. Plaintiff cannot, therefore, prove through these allegations and the third method of proving pretext—defendants' legitimate nondiscriminatory reasons were insufficient to warrant defendants' actions—that defendants' reasons were a pretext because Gallagher was not similarly situated as they did not work the same shift.

Defendants, furthermore, consistently maintain that it was a combination of events that led to plaintiff's transfer. While Gallagher and plaintiff may have been treated differently in a few situations, plaintiff cannot demonstrate that the majority of defendants' legitimate nondiscriminatory reasons were a pretext for discrimination.

Plaintiff claims testimony by Gallagher demonstrates pretext because he stated that he considered plaintiff equally responsible for 1999 operations in the fuel yard and that he also encountered personnel problems. However, "Without more, mere opinions expressed by co-workers who have no direct involvement in the decision-making processes have no probative value as to [defendants'] alleged discriminatory intent." *Haley v. General Elec. Co.,* 2001 WL 92135, at *7, 3 Fed.Appx. 240, 248 (6th Cir.2001).

Plaintiff disputes Dresner's affidavit allegation that plaintiff did not inform Dresner that Tom Munzer slept while at work. Plaintiff contends Dresner later admitted that he knew plaintiff tried to rectify the problem by taking Munzer off the shift. Plaintiff, however, does not dispute Dresner's main dissatisfaction: plaintiff failed to document the problem and Dresner, therefore, was unable to use the incident later for progressive discipline.

Plaintiff disputes Dresner's affidavit allegation that plaintiff complained to the safety director about extensive hours without first discussing the issue with Dresner. Plaintiff states that Dresner later admitted that an employee could bypass him and discuss the matter directly with the safety director. This type of discrepancy simply is not a genuine issue of material fact. Whether or not plaintiff was entitled to

bypass his immediate supervisor, Dresner still was dissatisfied that plaintiff initially did not discuss the matter with Dresner.

Plaintiff disputes Dresner's affidavit allegation that plaintiff failed to unload trains in enough time, thereby creating a backlog. While plaintiff argues that the trains were unloaded as quickly as possible, he does not dispute the legitimate nondiscriminatory reason that he did not schedule enough employees so that the trains could have been unloaded on time.

Plaintiff disputes Dresner's affidavit allegation that plaintiff did not defend his employer when the condition of a structure was questioned and no problem was found. Plaintiff contends that Dresner later admitted that a structural engineer agreed the structure did not look good. Dresner, however, also stated that the engineer guaranteed the safety of the structure so that it continued to operate.

Plaintiff disputes Dresner's affidavit allegation that plaintiff did not force Barrett to obtain new safety shoes by December 14, 1999. Plaintiff contends Dresner later admitted in his deposition that plaintiff forced Barrett to obtain new shoes by December 15, 1999. Dresner's affidavit, however, states that Barrett promised to obtain new shoes by November 26, 1999. Thus, whether plaintiff forced Barrett to obtain new shoes by December 14 or 15, Barrett did not obtain the shoes until mid-December when he promised to obtain them by November 26, 1999 after his injury on November 9, 1999.

As shown, plaintiff has attempted to refute several of the issues discussed in his meetings with Dresner and has attempted to show defendants' legitimate nondiscriminatory reasons are a pretext for age discrimination. Plaintiff cannot, however, show they are a pretext for discrimination. The best argument made by plaintiff is that Gallagher, a younger supervisor, was not disciplined for some of the conduct for which plaintiff was disciplined. Gallagher was not, however, similarly situated to plaintiff, and defendants consistently maintained that a combination of legitimate nondiscriminatory reasons led to plaintiff's transfer. The remainder of plaintiff's attempts to show pretext simply show slight discrepancies or inconsistencies in the facts.

Plaintiff does not show that defendants' legitimate nondiscriminatory reasons are a pretext for age discrimination. Plaintiff cannot show that defendants' actions even are connected somewhat to plaintiff's age. Plaintiff cannot show that defendants' legitimate nondiscriminatory reasons had no basis in fact, actually did not motivate the defendant's actions, or were insufficient to warrant the defendant's actions. Plaintiff cannot show that defendants' past practices contradicted defendants' legitimate nondiscriminatory reasons. *See e.g., Dews v. A.B. Dick Co.,* 231 F.3d 1016, 1023 (6th Cir.2000). Simply put, there is no genuine issue of material fact as to pretext.

Defendants' motion for summary judgment on plaintiff's ADEA claim shall be, therefore, granted.

### II. State–Based Claim

Plaintiff also claims that defendants violated Ohio's age discrimination law, R.C. § 4112.02(A) and (N), on the basis of the same conduct.

■ Under Ohio law, the burden of proof and framework for proving age discrimination parallel ADEA analysis. *Ercegovich v. Goodyear Tire & Rubber Co.,* 154 F.3d 344, 357–58 (6th Cir.1998) (citation omitted). I thus apply the foregoing analysis to plaintiff's state law claim.

Defendants' motion for summary judgment on plaintiff's state-based claim for age discrimination shall be, therefore, granted.

## CONCLUSION

It is, therefore,

**ORDERED THAT**

Defendants' motion for summary judgment be, and hereby is, granted.

**So ordered.**