April Hastings RAPP, et al., Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 4:00CV0897.

United States District Court, N.D. Ohio, Eastern Division.

June 25, 2001.

---

John L. Wolfe, Akron, OH, for Plaintiff

Edward L. Lavelle, Letson, Griffith, Woodall, Warren, OH, for Defendant.

## MEMORANDUM OPINION AND ORDER

ECONOMUS, District Judge.

This matter is before the Court upon the motion of the Defendant, General Motors Corporation ("GM"), for summary judgment (Dkt.# 30). The Plaintiff, April Hastings Rapp ("Plaintiff"), asserts two claims: (1) that during her employment she has been the subject of gender discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e–2, and the Ohio Revised Code § 4112.02(A); and (2) retaliation for protected activity in violation of Title VII of the Civil Rights Act,

42 U.S.C. § 2000e–3, and the Ohio Revised Code § 4112.02(I). The Plaintiff, Kevin Rapp ("Rapp"), asserts a derivative claim for loss of consortium.

## FACTS

The following facts are undisputed unless otherwise noted. The Plaintiff began employment with GM in 1994 at GM Energy Supply ("Energy Supply"), a division of GM involved in oil and gas production. (Certificate of Uncontested Facts at 2, ¶ 1.) The Plaintiff asserts that during this period of employment she worked as a general maintenance technician servicing gas wells, gas well equipment, and equipment used at the plant. (Am.Compl. at ¶ 6.) In 1994 and 1996, GM assessed and inventoried her work experience and listed pipefitting as one of the jobs with which she had experience. (*Id.* at ¶ 7.) The Plaintiff progressed from a "Level 4" employee to a "Level 5" employee while employed in this division.

Energy Supply closed in 1996. The Plaintiff was then hired at the GM Metal Fabrication Plant ("Fab Plant") in August 1997. Plaintiff worked at the Fab plant until she was placed on lay-off status in December 1997, due to a reduction in force.

The Plaintiff remained on lay-off status at the Fab Plant until she began to work in a non-skilled capacity at the GM Assembly Plant ("Assembly Plant") in April 1998. John Christy ("Christy"), a GM employee whose work history parallels the Plaintiff's, also accepted an offer and began to work in the Assembly Plant in a non-skilled position. (Am.Compl. at ¶ 11.) While they were employed at the Assembly Plant, both the Plaintiff and Christy had their former supervisor from Energy Supply, William Lallo ("Lallo"), write letters recommending that their work experi-

ences between 1984 and 1996 qualified each as having completed a pipefitter apprenticeship program.[1] (Id. at ¶ 12.) Lallo wrote virtually identical letters for each employee. (Pls.' Exs. 15, Christy at Pls.' Ex. 8.)

GM's hiring procedures are outlined in the National Collective Bargaining Agreement ("CBA") and local CBAs. The National CBA applies to all GM plants and each plant has its own local CBA. (Defs .Mot.Summ.J. at 7.) The Fab Plant and the Assembly Plant are separate divisions of GM, each plant with its own separate and distinct management and union. (Id. at 6.)

On June 18, 1998, the Fab Plant issued recall rights letters informing laid-off Fab Plant employees of their right to return to the Fab Plant when production resumed. Under ¶ 64(d) of the National CBA, employees who are laid off at one GM plant have the right to be recalled to work at that plant, even if they have been hired to work at another GM plant in the meantime. If the employee does not return to his or her former place of employment at GM within 5 working days, then he or she remains an employee at his or her present place of employment with GM. (Emrich Dep., pp. 12–13.) Once the employee declines the recall offer from the former plant, he or she loses his or her seniority and has no further recall rights at the former plant. (Id. at 11–12.) It is undisputed that the Plaintiff and Christy each received letters from Joseph Matteo, Supervisor in the Labor Relations Department at the Fab Plant, notifying them that they were being recalled to work at the Fab Plant, effective Monday, June 22, 1998. However, the letter instructed the recalled workers to not report to work on

that date. The return date had been delayed as the result of a labor dispute between GM and the unions at two of its plants in Flint, Michigan. Consequently, the letter advised the recalled employees to remain at home to await further instructions regarding a return date.

On June 22, 1998, the Plaintiff and Christy were placed on lay-off status from the Assembly Plant. (Am.Compl. at 3.) Also during June 1998, according to the Defendant, Robert Wilfer ("Wilfer"), the Superintendent of Production at the Fab Plant, signed a requisition for hiring one pipefitter based upon a recommendation from the personnel department. (Wilfer Dep. at 13–14.) Fred Schlayer ("Schlayer"), an hourly personnel coordinator at the Fab Plant, contacted Christy to arrange an interview for him with Wilfer for the position sometime during the week following June 22, 1998. (Christy Dep. at 45–46.)

Wilfer and Mike Yacko ("Yacko"), a general maintenance supervisor, interviewed Christy and reviewed his credentials. (Wilfer Dep. at 18.) Ken Padgett ("Padgett"), a union representative for the skilled trades, also reviewed Christy's credentials and agreed that he was qualified for the position. (Padgett Dep. at 9.) Although Yacko had reservations as to whether Christy was qualified for the position, Wilfer made the final determination based upon his own approval and that of Padgett. (Wilfer Dep. at 36.) Christy began work as a pipefitter at the Fab Plant on August 3, 1998. (Christy Dep. at 53.)

On August 3, 1998, the Plaintiff was recalled to the Assembly Plant. The Plaintiff contends that she had been un-

---

1. Completing a GM apprenticeship program is one way in which an employee can transfer from a non-skilled position to a skilled trades position, such as journeyman pipefitter, in accordance with the Collective Bargaining Agreement.

aware of any pipefitter openings at the Fab Plant. When she learned about Christy's placement, she went to see Schlayer to apply for a job as pipefitter at the Fab Plant. (Pls.' Mem. in Opp'n at 6.) Under the National CBA, in order for an employee to be considered for transfer to a GM plant other than the one in which he is presently employed, the employee must voluntarily complete a specific application for either area hire, extended hire, or return to former community. (Fischer Aff. at 1–2.)[2] These applications are placed with the National Employee Placement Center ("NEPC"). The function of the NEPC is to administer the employee placement provisions of the CBAs between GM and their union and Delphi and their union. (Fischer Aff. at 1.) Schlayer informed the Plaintiff that because she was no longer employed at the Fab Plant, she would have to file an application for an Extended Area Hire (Nationwide Preference). The Plaintiff filed an Extended Area Hire application on September 16, 1998. (Pls.' Mem. in Opp'n at 7.)

During the first part of 1999, the Fab Plant issued requisitions for three pipefitter positions. (Fischer Aff. at 2.) The NEPC made six offers of transfer to the pipefitter positions, one of which was to a female pipefitter. (Id.) Three of the offers were declined and three of the offers were accepted. (Id.) The newly hired pipefitters were classified as journeymen pipefitters prior to their transfer to the Fab Plant. (Id. at Exs.)

On December 29, 1998, the Plaintiff filed a complaint with the EEOC in connection with the Defendant's hiring Christy for the pipefitter position at the Fab Plant. (Pl.'s Ex. 22.) The Plaintiff alleged that the Defendant failed to hire her for the pipefitter position because of her gender. (Id.) On October 4, 1999, the EEOC issued a letter stating that there was reasonable cause to believe that the Plaintiff was denied the pipefitter position because of her gender and invited the parties to conciliate. (Am.Compl. at Ex. D.) The Plaintiff asserts that the Defendant refused to conciliate. (Id. at 5.) On March 8, 2000, the EEOC issued a right to sue letter to the Plaintiff. The Plaintiff filed the instant case on April 6, 2000.

On April 22, 2000, the Plaintiff filed a second complaint with the EEOC alleging that GM hired three male pipefitters between October 1999 and December 1999, despite the fact that the Plaintiff applied for the position in September 1998.[3] (Pls.' Ex. at EEOC Aff. .) The Plaintiff contends that GM did not hire her because she is a female and in retaliation for her filing an EEOC complaint. (Id.)

The Plaintiff asserts that GM discriminated against her because of her gender in two instances: (1) hiring John Christy as a pipefitter at the Fab Plant in July 1998; and (2) hiring three male pipefitters from Delphi in June 1999. The Plaintiff also asserts that GM retaliated against her for filing an EEOC complaint by hiring the three male pipefitters in June 1999. In Plaintiff's Opposition Memorandum (Dkt.# 57), the Plaintiff also contends that the Defendant's hiring policies have a disparate impact on women and minorities. As the Plaintiff failed to include this claim in her amended complaint, the Court need not consider it.

## ANALYSIS

FED.R.CIV.P. 56(c) governs summary judgment and provides, in pertinent part:

---

**2.** Harry Fischer is the NEPC coordinator.

**3.** Plaintiff's EEOC complaint is incorrect regarding the date of the hiring of the three pipefitters. The three pipefitters were hired on June 7, 1999.

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to a judgment as a matter of law.

The party moving for summary judgment bears the burden of showing the absence of a genuine issue as to any material fact, and for these purposes, the evidence submitted must be viewed in the light most favorable to the nonmoving party to determine whether a genuine issue of material fact exists. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970.)

"The burden on the moving party may be discharged if the moving party demonstrates that the non-moving party has failed to establish an essential element of his or her case for which he or she bears the ultimate burden of proof at trial." *Morales v. American Honda Motor Co., Inc.*, 71 F.3d 531, 535 (6th Cir.1995.) If the moving party meets this burden, then the non-moving party must present additional evidence beyond the pleadings. *See Id.* The non-moving party must present more than a scintilla of evidence in support of his or her position. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986.) Summary judgment must be granted unless there is sufficient evidence favoring the non-moving party for a judge or jury to return a verdict for that party. *See Id.* at 249, 106 S.Ct. 2505.

**Gender Discrimination**

The structure for analyzing a Title VII failure to promote claim based upon gender discrimination is well established. First, the plaintiff must set forth a *prima facie* case for discrimination.

To establish a *prima facie* case of failure to promote in the absence of direct evidence, the plaintiff must demonstrate that:

(1) she was a member of a protected class;

(2) she applied and was qualified for the position;

(3) she was considered for and denied the position; and

(4) other employees of similar qualifications who were not members of the protected class received promotions.

*See Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1020–21 (6th Cir.2000); *Texas Department of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas*, 411 U.S. 792, 802, 93 S.Ct. 1817 (1973); *Brown v. Tennessee*, 693 F.2d 600, 603 (6th Cir. 1982.) These elements also apply to claims of discrimination under Ohio state law. *See Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–583 (6th Cir.1992) (citations omitted.)

Provided the plaintiff establishes a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory reason for its questioned employment decision. *See Mitchell*, 964 F.2d at 582–583. Finally, if the defendant meets this burden, the plaintiff must show that the stated reason is actually pretext for illegal discrimination. *See Id.*

 A plaintiff can demonstrate pretext by showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct. *See Manzer v. Diamond Shamrock Chemicals Co.*, 29 F.3d 1078, 1084 (6th Cir.1994.) If a plaintiff can show that the defendant's proffered, non-discriminatory reason is pretextual, the trier of fact may infer discrimination. *See Kline v. Tennessee Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997.) Nevertheless, the

ultimate burden of proof to show discrimination remains on the plaintiff at all times. *See Hicks*, 509 U.S. at 511, 113 S.Ct. 2742; *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–56, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981.)

### 1. The June 1998 Position

Plaintiff first contends that the Defendant discriminated against her when it hired another unskilled, male employee, John Christy, as a pipefitter in June 1998. As Plaintiff is a female, the first element in the *prima facie* case analysis is established. The parties dispute, however, whether the Plaintiff applied for the pipefitter position. Accordingly, the Court will examine the evidence submitted by the parties to determine whether the Plaintiff did, in fact, apply for the pipefitter position that opened at the Fab Plant in June 1998.

In order for the Plaintiff to establish that she applied for the pipefitter position, the Plaintiff must first show that she filed a ¶ 63(a) application pursuant to the National CBA.[4] Under ¶ 63(a) of the National CBA, non-skilled GM employees have the right to apply for skilled trades positions within the particular GM plant in which they are employed. Paragraph 63(a) of the CBA states that if an employee can establish that he or she possesses the necessary experience and skills to perform a skilled trade adequately, then the employ-

ee-applicant will have hiring priority over applicants not working in that plant (Defs.' Ex. for Mot.Summ.J. at p. 11.) Secondly, the Plaintiff would have to demonstrate that she filed it after the first full week in March 1998. Under ¶ 26(g) of the Fab Plant's local CBA, all ¶ 63(a) applications are purged during the first full week of March. (Hackett Aff., ¶ 5, Ex. A.) In summary, the Plaintiff must establish that she filed a ¶ 63(a) application subsequent to the March 1998 purge in order to satisfy the second element of a *prima facie* case of discrimination.

■ The Plaintiff submitted to this Court the copies of seven applications for transfer promotions made pursuant to ¶ 63(a) and ¶ 63(b) of the National CBA, which she filed on October 24, 1997 with Lisa Booker,[5] a temporary employee in the Fab Plant personnel department. (Rapp Aff. at 4; Pls.' Ex. 13.) However, the Plaintiff did not produce any evidence to demonstrate that she filed new ¶ 63(a) applications after the purge in March 1998, pursuant to the Fab Plant's local CBA ¶ 26(g). The Plaintiff does not claim, and provides no evidence to demonstrate to this Court, that she applied for the pipefitter position using the formal mechanism provided for in the National and the local CBAs subsequent to the March 1998 purge.[6]

---

4. Section 63(a)(2) provides, in relevant part:

 Employees who desire advancement within the plant to higher paid classifications in another department or to higher paid classifications where the employee is working outside an established scope of selection that is broader than a department may make application to their supervisor or the Personnel Department on forms provided by the Corporation on which they may state their qualifications and experience. Thereafter, as openings occur, such applicants will be considered in the selection process for that promotion provided they have so

applied at least one (1) week in advance of the opening in question.

5. The Defendant states that the name of the employee to whom the Plaintiff gave her applications is Lisa Booth.

6. The Sixth Circuit recently held that "in failure to promote cases a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Dews v. Dick*, 231 F.3d 1016, 1022

As the Plaintiff failed to comply with the formal application procedures outlined in the National and the Fab Plant's local CBAs, the Plaintiff cannot establish that she applied for the pipefitter position which became available in June 1998. Consequently, the Plaintiff cannot establish the second element of her *prima facie* case under Title VII.

Even *assuming arguendo* that the Plaintiff can establish a *prima facie* case, the Plaintiff cannot show that the reason she was not selected for the pipefitter position was a pretext for discrimination based on her gender.

The Defendant asserts that the reason the Plaintiff was not considered for the pipefitter position was that none of the decision-makers in this case knew of the Plaintiff or of her interest in the position. (Wilfer Dep. at p. 19, Yacko Dep. at p. 25, Padgett Dep. at p. 3.) The Defendant has also proffered that Christy was informed of the position because of his relationship with Schlayer, not because of any discriminatory animus for the Plaintiff.

The Plaintiff asserts that this is pretextual for four reasons: (1) Christy did not have to file a skilled trades application or an application to be classified as a journeyman pipefitter; (2) both the Plaintiff and Christy relinquished their recall rights to the Fab Plant; (3) the Defendant's contention that they were unaware of the Plaintiff's interest is not credible; and (4) the Plaintiff was as qualified or more qualified than Christy. For the reasons stated below, the Plaintiff has failed to establish that the Defendant's proffered reasons are pretextual.

■ First, the Plaintiff argues that the Defendant did not require Christy to file a skilled trades application and that they refused to permit her to file one. The Plaintiff relies on her affidavit that, on November 6, 1997, she approached Schlay-

---

(6th Cir.2000.) In that case, the plaintiff, Dews, was aware of an opening and had expressed an interest in acquiring the position, but the company had no formal mechanism by which he could apply for the job. The district court granted summary judgment to the Defendant company, A.B. Dick, finding that the Plaintiff, Dews, failed to establish a *prima* facie case of racial discrimination because he had not applied for a sales management position, and the company, A.B. Dick, had not considered him for that position. *Id.* at 1021.

The Sixth Circuit reversed the district court's judgment reasoning that "even if the company did discriminate against Dews on the basis of his race, he would never be able to prove it successfully if the very act of which he complains—that the company discriminated against him by not considering him for the promotion—is a required element of the *prima* facie case." *Id.* The Sixth Circuit stated that a company has a "duty to consider all those who might reasonably be interested in a promotion were its availability made generally known." *Id.* at 1023.

The case *sub judice,* is distinguishable from *Dews,* and, thus, the Plaintiff is not relieved of establishing the "applied for" and "was considered" prongs of the second and third elements of a *prima facie* case of discrimination. In *Dews,* the decision-makers in the defendant company were aware of Dews interest in obtaining a promotion and actually dissuaded him from pursing it. Moreover, the company did not provide a formal mechanism pursuant to which Dews could apply for the position.

In the instant case, the decision-makers did not know of the Plaintiff nor were they aware of her interest in the pipefitter position. Furthermore, the National and the local CBA provided a formal mechanism by which the Plaintiff could have made her interest in the position known to those responsible for hiring employees. The Plaintiff did not submit any evidence indicating that she was treated unfairly when she visited the personnel department at the Fab Plant. She was not prevented from filing the ¶ 63(a) and ¶ 63(b) applications in October 1997. The evidence clearly indicates that the Plaintiff failed to apply for the pipefitter position using the mechanism provided for in the CBAs.

er in the Fab Plant personnel department and asked him if she could fill out a skilled trades application. (Rapp Aff. at 4.) According to the Plaintiff, Schlayer informed her that there were no openings and, therefore, applications were not being taken. (*Id.*) Eight months prior to filing her affidavit, the Plaintiff testified at her deposition that she did not recall having provided Schlayer with her resume, experience assessment and inventory form, and Energy Supply job description before August 19, 1998. (Rapp Dep. at 48–49.) Similarly, Schlayer testified at his deposition that the first time he became aware of the Plaintiff's interest in a pipefitter position was after the Fab Plant resumed operating in August 1998. (Schlayer Dep. at 32, 45.) Thus, the Plaintiff's deposition testimony was consistent with Schlayer's deposition testimony and the Plaintiff's contradictory affidavit statements regarding the meeting with Schlayer in November 1997, will be disregarded. *See Reid v. Sears, Roebuck,* 790 F.2d 453, 460 (6th Cir.1986) ("A party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts her earlier deposition testimony.") (citation omitted).

Although the Defendant concedes that Christy did not file a formal application for the pipefitter position, the Defendant contends that Christy learned of the position as a result of his longstanding relationship with Schlayer. Schlayer testified at his deposition that he and Christy met at a restaurant several years before the instant matter while Christy was employed at Energy Supply. (Schlayer Dep. at 13–153.) Christy and Schlayer discovered that they shared a common interest in cars. In addition, Christy had done repair work several times on Schlayer's car. (*Id.* at 14.) Christy testified as his deposition that Schlayer contacted him sometime during the week after June 22, 1998, regarding the pipefitter position at the Fab Plant, and arranged an interview with management for him. (Christy Dep. at 45–47.)

■ Wilfer, the person having the final authority to hire Christy, also happened to be one of Christy's former supervisors during his employment at the Fab plant. (Wilfer Dep. at 19.) Although Wilfer's supervisory contact with Christy was brief, Wilfer was favorably impressed with Christy. Wilfer testified at his deposition that Christy seemed "very energetic and [had] *sic* a lively attitude towards what he did." (*Id.*) Although the Defendant avers that Christy's hiring was a highly unusual method of hiring a pipefitter, Wilfer retained final authority, and with the approval of the union representative, Padgett, he made the decision to hire Christy.[7] The Sixth Circuit has stated that "favoritism based on friendship or a prior relationship does not raise an inference of discrimination." *Goostree v. Tennessee,* 796 F.2d 854 (6th Cir.1986.)

The above-stated facts show that Christy's selection was the result of his friendship with Schlayer, and his former working relationship with Wilfer, rather than the result of discriminatory animus on the part of GM. Thus, the fact that Christy did not have to file a formal application for the pipefitter position is not evidence of pretext.

Second, the Plaintiff asserts that at the time the position opened, she and Christy

---

7. Yacko, the maintenance supervisor who interviewed Christy for the position, admits that he did not think that the union representative would approve of Christy's selection. (Yacko Dep. at 14.) Yacko stated at his deposition that during his thirty years as a maintenance supervisor and a general supervisor in the Fab Plant, Christy was the only non-skilled worker promoted to a skilled pipefitter position of which he was aware. (*Id.* at 30–32.)

had declined their recall rights at the Fab Plant. The Plaintiff further asserts that GM allowed Christy to rescind his relinquishment of his recall rights, but not the Plaintiff. However, the record clearly indicates that these assertions are not true.

Under ¶ 64(d) of the National CBA, an employee who has been recalled has five working days to report to the plant which issued the recall. If the employee does not return, he loses his seniority at that plant. (Emrich Dep. pp. 11–12.) In this case the ¶ 64(d) recall letter was issued on June 18, 1998, and informed the recalled employees that although the effective date on the letter was June 22, 1998, they were not to report to work that day. The letter instructed the recalled employees that the return date would be announced on the television and radio. In fact, the Fab Plant did not open again until August 3, 1998.

The facts establish that Christy was still considered an employee of the Fab Plant, in compliance with the CBA, at the time of his interview for the position of pipefitter in June 1998. The Plaintiff, on the other hand, declined her right to return to the Fab Plant when she returned to work at the Assembly Plant in August 1998. These facts do not support the Plaintiff's assertion that the Defendant's legitimate, non-discriminatory reasons are pretextual.

■ Third, the Plaintiff claims that the Defendant's proffered reasons are pretextual because it is not credible that the Defendant was unaware of her interest in the pipefitter position. However, the Plaintiff did not submit any evidence to refute the deposition testimony of Wilfer, Yacko, and Padget, the individuals responsible for hiring Christy, that they did not know of the Plaintiff or of her interest in the pipefitter position. (Wilfer Dep. at 19; Yacko Dep. at 25; Padgett Dep. at 3.)

■ Last, the Plaintiff asserts that the Defendant's proffered reasons are pretextual because she was as qualified as Christy or more qualified than him for the position as a pipefitter. However, as noted earlier, none of the individuals responsible for Christy's selection were aware of the Plaintiff or of her interest in the pipefitter position. (Am.Compl. at ¶ 16.) Consequently, whether the Plaintiff was as qualified as Christy is irrelevant in establishing pretext in this case.

Based upon the foregoing, the Defendant is entitled to summary judgment on the Plaintiff's claims under Title VII, 42 U.S.C. § 2000e–2 and the Ohio Revised Code § 4112.02(A) for gender discrimination.

*The June 1999 Position*

The Plaintiff also claims that the hiring of the three male pipefitters in the Fab Plant in June 1999, constitutes gender based discrimination. Again, the Plaintiff, a female, clearly has established the first element of a *prima facie* case of gender discrimination. The Plaintiff has also established that during September 1998, she filed an application for Extended Area Hire with the NEPC, the appropriate application for GM employees who wish to transfer from one GM plant to another GM plant. However, as the Plaintiff has not sustained her burden of establishing that she was similarly qualified for the positions, her *prima facie* case fails.

In order to fill a pipefitter position, the Fab Plant first determines whether there are any ¶ 63(a) applications for the transfer of non-skilled employees within the plant into skilled trades positions. (Emrich Dep. at 6.) If there are no such applications, management relies on the NEPC to provide them with the applications of qualified employees from other GM plants. (Emrich Dep. at 6, Fischer Aff. at 2.) In early 1999, after the three pipefitter posi-

tions had been requisitioned, the Fab Plant determined that no ¶ 63(a) applications had been filed by any employees in the Fab Plant. Thereafter, the Fab Plant sent an approved staffing requisition for journeymen pipefitters to NEPC. (Fischer Aff. at 3.)

The NEPC is guided by the Memorandum of Understanding Employee Placement ("MEUP") of the National CBA, which governs the transfer of employees from one GM plant to another. (Fischer Aff., Ex. A.) The MEUP stipulates the hiring priority as follows: (1) plant recall, (2) plant rehire, (3) area hire, (4) closed plants, (5) GIS eligible, (6) extended area hire, and (7) non-volume protected employees with the area hire. Under the "area hire" provision, only employees on indefinite layoff or active employees for plants having "excess employees," in plants that are within a 50 mile radius of the plant which is seeking employees, are eligible for hire.

In response to the Fab Plant's request, the NEPC conducted a search for eligible employees between May 10, 1999, and May 17, 1999. (Fischer Aff. at 3.) The NEPC made six offers of transfer, three of which were accepted and three of which were declined. (*Id.* at 2.) Interestingly, one of the offers made by NEPC was to a member of the protected class, a woman, who declined to accept the offer.

■ The following facts coupled with the procedures followed by the Fab Plant and the NEPC in filling the pipefitter positions, establish that the Plaintiff was not similarly qualified as the three male employees hired by the Fab Plant. First, the Plaintiff was ineligible and therefore could not qualify for the position, pursuant to ¶ 63(a), because she was no longer an employee of the Fab Plant after she returned to the Assembly Plant on August 3, 1998. Second, each of the three male employees

hired by the Fab Plant was classified as a journeyman pipefitter and each had more seniority than the Plaintiff, an unskilled wage employee. (Certificate of Uncontested Facts at 7, ¶ 7; Fischer Aff. at Ex. B, C, D.) Finally, the NEPC did not offer a transfer to the Plaintiff because, at the time of the NEPC search, although she was employed in a GM plant within the 50 mile radius of the Fab Plant, her status was not "indefinite layoff" or "excess employee." (Fischer Aff. at 3.) Consequently, under the hiring priority established in the MEUP of the CBA, the Plaintiff was not eligible to be considered for the available pipefitter positions at the Fab Plant in early 1999. Accordingly, the Plaintiff cannot establish that she was similarly qualified as the three pipefitters who were hired for the position.

Based upon the foregoing, the Plaintiff cannot establish the fourth element of a *prima facie* case under Title VII. Even *assuming arguendo* that the Plaintiff established a *prima facie* case, the Plaintiff could not prove that the Defendant's articulated legitimate, non-discriminatory reason, i.e., GM's hiring policies pursuant to the National CBA, is pretextual. Accordingly, the Defendant is entitled to summary judgment on the Plaintiff's claims under Title VII, 42 U.S.C. § 2000e–2 and the Ohio Revised Code § 4112.02(A), for gender discrimination.

*Retaliation*

The Plaintiff also alleges that GM hired the three male pipefitters in June 1999, in retaliation for her filing a complaint with the EEOC pursuant to Title VII, 42 U.S.C. § 2000e–3 and O.R.C. § 4112.02(I.) (Pl. Am.Compl.7.)

In order to establish a *prima facie* claim of Title VII retaliation, the plaintiff must allege and prove that she:

(1) engaged in an protected activity;

(2) that this exercise of her protected rights was known to defendant;

(3) that defendant thereafter took an employment action adverse to the plaintiff; and

(4) that there was a causal connection between the protected activity and the adverse employment action.

*Canitia v. Yellow Freight Sys., Inc.*, 903 F.2d 1064, 1066 (6th Cir.1990). These elements also apply to claims of discrimination under Ohio state law. *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582–583 (6th Cir.1992) (*citing In re Brantley*, 34 Ohio App.3d 320, 518 N.E.2d 602 (1987)).

Once the plaintiff establishes the above elements, a presumption of retaliation is raised. The defendant then has the opportunity to rebut this presumption by articulating some legitimate, nondiscriminatory reason for its decision. *Canitia*, 903 F.2d at 1066 (citation omitted.) The plaintiff must then demonstrate by a preponderance of the evidence that the proffered reason was pretextual. *See Id.* Throughout the entire process, the plaintiff bears the ultimate burden of persuasion. *See Id.*

*1. Causal Connection Between the Employment Action and the Protected Activity*

The first element is undisputed, as the Plaintiff's complaint with the EEOC is a protected activity. Although the Plaintiff asserts that the Defendant was aware that she filed an EEOC complaint, Plaintiff did not provide the Court with any evidence in support of this assertion.

 However, even *assuming arguendo* that management was aware of her EEOC complaint, the Plaintiff also fails to establish that there was a causal connection between her filing the EEOC charge in 1998, and the alleged retaliatory hiring of the three male pipefitters in 1999. As

discussed at length earlier in this memorandum opinion and order, the record demonstrates that the procedure followed by the Fab Plant in hiring the three male pipefitters was in conformance with the National CBA and the Fab Plant's local CBA. The Plaintiff has not submitted any evidence to the contrary.

Based upon the foregoing, the Plaintiff has failed to establish both the second and fourth elements of a *prima facie* case of retaliation. Therefore, the Defendant is entitled to summary judgment on the Plaintiff's claims pursuant to Title VII, 42 U.S.C. § 2000e–3 and the Ohio Revised Code § 4112.02(I), for retaliation.

**Derivative State Claim**

 Plaintiff, Kevin Rapp, filed a derivative loss of consortium claim. In *Wixson v. Dowagiac Nursing Home*, 87 F.3d 164, 172 (6th Cir.1996), the Sixth Circuit found that a district court properly dismissed a spouse's derivative loss of consortium claim after dismissing the federal and state claims. Accordingly, the derivative claim asserted by her husband must also be dismissed.

For the foregoing reasons, the Defendant's Motion for Summary Judgment is Granted.

**IT IS SO ORDERED.**